PEOPLE v HOFFMEISTER

Docket No. 55792. Argued May 6, 1975 (Calendar No. 5).—Decided
    May 27, 1975. Rehearing denied 394 Mich 944.

   Byron L. Hoffmeister was convicted of first-degree murder by a
   jury in Livingston Circuit Court, Paul R. Mahinske, J. The
   Court of Appeals, Lesinski, C. J., and Holbrook and Bashara,
   JJ., affirmed (Docket No. 14490). Plaintiff appeals. *Held:*

      1. The brutality of a killing does not itself justify an infer-
   ence of premeditation and deliberation. The use of a lethal
   weapon, in this case apparently a knife, may support a finding
   of second-degree murder, but is not alone sufficient to support a
   conviction of first-degree murder. There was no basis on the
   record for an inference that between the successive, potentially
   lethal blows the killer calmly, in a cool state of mind, measured
   and evaluated and subjected the nature of his response to a
   second look.

      2. The evidence did not show premeditation and deliberation;
   therefore, the degree of the murder conviction is reduced to
   second degree and the case is remanded for modification of the
   judgment of conviction and resentencing.

      3. There is no need in this case to address the issue of
   whether the trial judge erred in failing *sua sponte* to instruct
   the jury on the lesser included offense of second-degree murder.

      Reversed and remanded for entry of a judgment of conviction
   of second-degree murder and resentencing.

      52 Mich App 219; 217 NW2d 58 (1974) reversed.

1. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—DE-
       LIBERATION—PREMEDITATION.

   The Penal Code defines first-degree murder as willful, deliberate
   and premeditated killing while second-degree murder is defined
   residually as all other kinds of murder; this legislative classifi-
   cation of murder into two degrees would be meaningless if
   "deliberation" and "premeditation" were construed as requir-

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 40 Am Jur 2d, Homicide §§ 44–48, 52.
[6, 7] 21 Am Jur 2d, Criminal Law §§ 185, 494.

ing no more reflection than may be involved in the mere formation of a specific intent to kill (MCLA 750.316, 750.317).

2. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—DELIBERATION —EVIDENCE—INFERENCES.

The additional elements of premeditation and deliberation required for a conviction of first-degree murder need not be established by direct evidence; the requisite state of mind may be inferred from defendant's conduct judged in the light of the circumstances but such an inference must have an adequate basis in the record evidence (MCLA 750.316).

3. HOMICIDE—FIRST-DEGREE MURDER—BRUTALITY—PREMEDITATION— DELIBERATION.

The brutality of a killing does not itself justify an inference of premeditation and deliberation (MCLA 750.316).

4. HOMICIDE—FIRST-DEGREE MURDER—WEAPONS.

The use of a lethal weapon is supportive of a finding of second-degree murder but alone is not sufficient to support a conviction of first-degree murder (MCLA 750.316, 750.317).

5. HOMICIDE—FIRST-DEGREE MURDER—INTENT—PREMEDITATION—DE-LIBERATION.

Some time span between initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation which is required for a conviction of first-degree murder (MCLA 750.316).

6. CRIMINAL LAW—LESSER INCLUDED OFFENSE—EVIDENCE.

A remand for entry of a judgment of conviction of the lesser included offense is proper where the jury has returned a verdict of guilty of the higher charged offense upon evidence sufficient only to prove the lesser offense.

7. HOMICIDE—FIRST-DEGREE MURDER—LESSER INCLUDED OFFENSE— SECOND-DEGREE MURDER.

A jury which returns a verdict of guilty of murder in the first degree necessarily finds that the lesser included offense of second-degree murder was committed (MCLA 750.316, 750.317).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas Kizer, Jr.,* Prosecuting Attorney, and *Prosecuting Attorneys Appellate Service* (by *Lee Wm. Atkinson),* for the people.

*Dank, Peterson & Hay, P. C.,* by *James M. Bier-nat,* for defendant on appeal.

LEVIN, J. Byron Lee Hoffmeister appeals his conviction of first-degree murder.

The issues are whether the trial judge erred in failing *sua sponte* to instruct the jury on the lesser included offense of second-degree murder and whether there was sufficient evidence of premeditation and deliberation to support a first-degree murder conviction.

We conclude that the evidence did not show premeditation and deliberation. We reduce the degree of the murder conviction to second degree and remand for modification of the judgment of conviction and resentencing. There is no need in this case to address the instructional issue.[1]

I

Witnesses testified that shortly before 7:30 p.m. they saw a Volkswagen and a silver gray "Firebird or a Camaro" parked together alongside the Pleasant Valley Road exit ramp of westbound I-96. The Volkswagen, which was driven by the deceased, a young woman, and the silver gray automobile driven by a young man wearing a T-shirt and Levis, drove up the ramp, turned right and pulled immediately into a parking area adjacent to the exit ramp on Pleasant Valley Road. The fatal assault occurred in the parking area.

By 7:30 p.m. the deceased, although fatally

---

[1] Hoffmeister seeks reversal and a new trial for the failure of the trial court *sua sponte* to instruct on second-degree murder. Even if the court did err by failing to so instruct the jury, in this case the proper remedy would be reduction of the degree of the conviction. The elements of second-degree murder were proven. A jury which returns a verdict of guilty of murder in the first degree necessarily finds that the lesser included offense of second-degree murder was committed (see part III, *infra*).

wounded, had driven to a friend's house approximately three-tenths of a mile from the parking area. She died within the hour of "hemorrhage related to multiple lacerations and stab wounds".

The question at trial was whether Hoffmeister, who owned a silver gray Firebird, was the person who killed the deceased. The description given by several witnesses of the man seen with the deceased on the exit ramp and in the parking area resembled Hoffmeister. One witness identified Hoffmeister in response to the prosecutor's inquiry whether "anyone in the courtroom * * * appears to look like this man".

Physical evidence corroborated Hoffmeister's guilt. His fingerprints were found on decedent's Volkswagen near the engine. Tire tracks in the parking area were identified as made by Hoffmeister's car and blood of the same type as decedent's was found near those tracks.

II

The Penal Code defines first-degree murder as "wilful, deliberate and premeditated killing",[2] while second-degree murder is defined residually as "[a]ll other kinds of murder".[3] This "legislative classification of murder into two degrees would be meaningless if 'deliberation' and 'premeditation' were construed as requiring no more reflection than may be involved in the mere formation of a specific intent to kill". *People v Anderson,* 70 Cal 2d 15, 26; 447 P2d 942, 948; 73 Cal Rptr 550, 556 (1968).

The additional elements of premeditation and deliberation need not be established by direct evi-

---

[2] MCLA 750.316; MSA 28.548.

[3] MCLA 750.317; MSA 28.549.

dence. The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances. Such an inference, however, must have adequate basis in record evidence.

Hoffmeister moved for a directed verdict, arguing that "there is no evidence from any witness that [Hoffmeister] did form or did any act with premeditation".

The prosecutor responded that "the nature of the wounds, [and] the number of wounds" inflicted on the deceased together with his "several moments with" her were sufficient facts from which the jury could reasonably infer premeditation and deliberation.

The brutality of a killing does not itself justify an inference of premeditation and deliberation. "The mere fact that the killing was attended by much violence or that a great many wounds were inflicted is not relevant [on the issue of premeditation and deliberation], as such a killing is just as likely (or perhaps more likely) to have been on impulse."[4]

There is no basis on this record for an inference that between the successive, potentially lethal blows the killer calmly, in a cool state of mind, "measure[d] and evaluate[d]" and subjected "the nature of his response to a 'second look' ".[5]

"It is well established that the brutality of a killing

---

[4] LaFave & Scott, Criminal Law, § 73, p 565.

It is not claimed that the evidence would permit a finding that the wounds were inflicted over such a period of time that there was an intervening period for premeditative reflection by the assailant. The prosecutor stated: "Maybe he made a stab and then retracted to see whether he needed to do another one but I submit to you that these [wounds] were probably in rapid succession with his intent to do away with this young lady".

[5] *People v Morrin,* 31 Mich App 301, 329–330; 187 NW2d 434 (1971). *See People v Vail,* 393 Mich 460, 468; 227 NW2d 535 (1975).

cannot in itself support a finding that the killer acted with premeditation and deliberation." *People v Anderson, supra,* p 24.

" * * * [M]any murders most brutish and bestial are committed in a consuming frenzy or heat of passion, and that these are in law only murder in the second degree. The Government's evidence sufficed to establish an intentional and horrible murder—the kind that could be committed in a frenzy or heat of passion. However the core responsibility of the court requires it to reflect on the sufficiency of the Government's case. * * *

"The violence and multiple wounds, while more than ample to show an intent to kill, cannot standing alone support an inference of a calmly calculated plan to kill requisite for premeditation and deliberation, as contrasted with an impulsive and senseless, albeit sustained, frenzy." *Austin v United States,* 127 US App DC 180, 190; 382 F2d 129, 139 (1967).

While the murder weapon was never found, it appears to have been a knife. The use of a lethal weapon is supportive of a finding of second-degree murder. But alone it is not sufficient to support a conviction of first-degree murder:

" 'The use of a lethal weapon is not in itself sufficient evidence to warrant a verdict of murder in the first degree but in addition to this there must be evidence in the case, as to circumstances surrounding the killing or the manner in which the weapon is used, from which a logical inference may be drawn that there was willfulness, deliberation and premeditation.' " *People v Vinunzo,* 212 Mich 472, 475; 180 NW 502 (1920).[6]

---

[6] *Similarly, see* LaFave & Scott, *supra,* p 564.

"That appellant used a knife to accomplish the murder is not probative of premeditation and deliberation because he did not procure it specifically for that purpose but rather carried it about with him as a matter of course." *Austin v United States,* 127 US App DC 180, 190; 382 F2d 129, 139 (1967).

No motive for the crime was shown. It was not suggested that Hoffmeister and decedent had met before and there was no evidence that he had a larcenous or sexual purpose.

Some time span between initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation. The testimony that Hoffmeister and decedent were together for a short period of time leaves open the possibility of premeditation and deliberation. There is no basis, however, on this record for concluding that adequate time for reflection, for a "second look", intervened between formation of the homicidal intent and commission of the crime.

"That there was a half-hour period (4:30 a.m. to 5:00 a.m.) during which appellant had ample time to premeditate and deliberate is not evidence that appellant actually did cogitate and mull over the intent to kill." *Austin v United States, supra,* p 190.

That the two cars were moved the short distance from the exit ramp to the parking area does not establish, as suggested by the prosecutor, that Hoffmeister guided the deceased "to a more secluded spot" as part of a preformulated plan to kill her.[7]

### III

We reduce the degree of Hoffmeister's murder conviction to second degree and remand for entry of a modified judgment of conviction and resentencing.

---

[7] The tire marks suggest that the killer sped away after committing the crime. Whatever this action may infer about his post-murder state of mind, it suggests little or nothing about his thoughts, if any, before or during the murder. *See Austin v United States, supra,* pp 190–191; LaFave & Scott, *supra,* p 565.

The evidence was sufficient to establish second-degree murder. It was reasonable for the jury to conclude, as it necessarily did when it found Hoffmeister guilty of first-degree murder, that he intentionally killed the deceased.

It is proper to remand for entry of a judgment of conviction of the lesser included offense where the jury has returned a verdict of guilty of the higher charged offense upon evidence sufficient only to prove the lesser offense.[8] Where the defendant is convicted of the higher charged offense, it is apparent that the verdict was not the product of compromise.[9]

Reversed and remanded for entry of a judgment of conviction of second-degree murder and resentencing.

---

[8] *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973); *People v Morrin, supra,* p 337; *Austin v United States, supra,* pp 191–194 (remand to enter judgment of second-degree murder "unless the District Court determines that a new trial is in the interest of justice"); *State v Porello,* 138 Ohio St 239; 20 Ohio Ops 281; 34 NE2d 198 (1941) (affirming intermediate court's modifying first-degree murder to manslaughter); *Forsha v State,* 183 Tenn 604; 194 SW2d 463 (1946); *State v Braley,* 224 Or 1, 13–15; 355 P2d 467, 473–474 (1960); *State v Jackson,* 198 Minn 111; 268 NW 924 (1936) (modifying second-degree to third-degree murder); *People v Anderson,* 70 Cal 2d 15, 36; 447 P2d 942, 955; 73 Cal Rptr 550, 563 (1968); *State v Gunn,* 89 Mont 453; 300 P 212 (1931); *People v Monaco,* 14 NY2d 43; 248 NYS2d 41; 197 NE2d 532 (1964) (reduction of second-degree murder to first-degree manslaughter).

[9] *Compare People v Vail, supra,* p 464, where defendant's conviction of manslaughter was reversed and a new trial granted because the trial judge improperly instructed the jury on first-degree murder.

"[W]here a jury is permitted consideration of a charge unwarranted by the proofs there is always prejudice because a defendant's chances of acquittal on any valid charge is substantially decreased by the possibility of a compromise verdict. For this reason it is reversible error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged."

*Similarly, see, People v Marshall,* 366 Mich 498; 115 NW2d 309 (1962); *People v Hansen,* 368 Mich 344; 118 NW2d 422 (1962).

T. G. KAVANAGH, C. J., and WILLIAMS and J. W. FITZGERALD, JJ., concurred with LEVIN, J.

M. S. COLEMAN, J., concurred in the result.

SWAINSON, J., and the late Justice T. M. KAVANAGH took no part in the decision of this case.