McCormack, J. (dissenting).
No one disputes that defendant Christopher Oros brutally murdered Marie McMillan in November 2014. Nor does anyone dispute that he did so intentionally-he admitted as much himself-when he stabbed her no fewer than 29 times. The only dispute is whether there was sufficient evidence for a jury to conclude beyond a reasonable doubt that Oros thought about killing McMillan in the specific way required by first-degree murder before deciding to act. The question is whether, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the **251 jury's verdict, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Oros decided to kill McMillan after premeditation and deliberation.
Bad facts, bad law.
The majority concludes that because the jury could reasonably infer that the defendant had enough time to subject his actions to a "second look," there was sufficient evidence to find beyond a reasonable doubt that he did premeditate and deliberate. That is, the possibility that he could have premeditated and deliberated is all that's required. In so holding, the majority treats premeditation, deliberation, and intent to kill as fungible-thereby collapsing the distinction between first- and second-degree murder-and loses sight of the burden of proof. The law demands principled distinctions between criminal offenses and proof of each element beyond a reasonable doubt. I respectfully dissent.
The standard of review for sufficiency of evidence is exceedingly deferential-a reviewing court must make all reasonable inferences to support the jury's verdict-but the verdict is not unreviewable: it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."
*571 Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Due process requires that the prosecution prove every element beyond all reasonable doubt. In re Winship , 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In a first-degree murder case, that means the prosecution must prove premeditation and deliberation beyond a reasonable doubt. "[S]ufficient proof [is] defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson , 443 U.S. at 316, 99 S.Ct. 2781.
**252 It requires that the prosecution put forth more than a "mere modicum" of evidence. Id . at 320, 99 S.Ct. 2781.
To be sure, a jury can make reasonable inferences to arrive at a verdict. Black's Law Dictionary (10th ed.) defines "inference" as "[a] conclusion reached by considering other facts and deducing a logical consequence from them." The prosecution must produce sufficient evidence to make the jury's inferences reasonable. People v. Hardiman , 466 Mich. 417, 430, 646 N.W.2d 158 (2002). "[T]he inferences must have support in the record and cannot be arrived at by mere speculation." People v. Plummer , 229 Mich. App. 293, 301, 581 N.W.2d 753 (1998). Thus, deference is due up to the last link in the chain of logical inferences, but not beyond that point-if the jury has to resort to speculation to reach its verdict, the prosecution has failed to carry its burden of proof. Id . ; see also Pennsylvania R Co. v. Chamberlain , 288 U.S. 333, 344, 53 S.Ct. 391, 77 L.Ed. 819 (1933) (providing that a jury verdict cannot "rest[ ] upon mere speculation and conjecture").
First-degree murder is "[m]urder perpetrated **240 by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). To "premeditate" is to "think about beforehand" and to "deliberate" is to "measure and evaluate the major facets of a choice or problem." People v. Bass , 317 Mich. App. 241, 266, 893 N.W.2d 140 (2016) (quotation marks and citation omitted). It is well settled that when reading a statute, we "must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." People v. Miller , 498 Mich. 13, 25, 869 N.W.2d 204 (2015) (quotation marks and citation omitted). Thus, a deliberate and premeditated killing requires proof beyond merely thinking twice-the **253 prosecutor must show that the perpetrator's thought process had the right timing (premeditated) and was of the right quality (deliberate). The two factors are, of course, correlated: the quality of thought tends to improve with time. But for the question of sufficiency of the evidence, we must consider whether the evidence allowed the jury to infer that the defendant at least thought about his intent to kill before acting on it, that there was sufficient time for a reasonable person to measure and evaluate the decision to kill (that is, time to take a "second look"), and that the defendant did, in fact, measure and evaluate the decision to kill.
Timing first: Michigan jurisprudence has emphasized that " ' "[s]ome time span between [the] initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation." ' " People v. Gonzalez , 468 Mich. 636, 641, 664 N.W.2d 159 (2003), quoting People v. Tilley , 405 Mich. 38, 45, 273 N.W.2d 471 (1979), in turn quoting People v. Hoffmeister , 394 Mich. 155, 161, 229 N.W.2d 305 (1975). The amount of time necessary to premeditate is "incapable of exact determination," but at a minimum, "the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.' "
*572 People v. Vail , 393 Mich. 460, 469, 227 N.W.2d 535 (1975), overruled on other grounds by People v. Graves , 458 Mich. 476, 581 N.W.2d 229 (1998) (quotation marks and citation omitted).
Time to take a second look is necessary, but not sufficient, for a finding of premeditation and deliberation. The prosecution must prove first that there was sufficient time to allow the defendant to take a "second look" after forming the intent to kill and, second, that the defendant did, in fact, premeditate before acting on **254 the intent to kill. "[P]remeditation is a question of fact, not of law." People v. Moss , 70 Mich. App. 18, 45, 245 N.W.2d 389 (1976) (M. J. KELLY , J., concurring in part and dissenting in part), aff'd sub nom Tilley , 405 Mich. 38, 273 N.W.2d 471. And while such a question is not susceptible to bright-line rules, I am aware of no authority which holds that an inference that the defendant had the opportunity to premeditate has alone been sufficient evidence that he did so.[1] Rather, sufficient opportunity to take a second look is better thought of as a precondition for a finding of premeditation and deliberation. In short, premeditation requires some passage of time, but the passage of time does not prove premeditation, much less deliberation.
The majority asserts that "[s]econd-look law has been well established in Michigan for over a hundred and fifty years ...." Ante , p. 566 n. 9. True. And that makes it all the more puzzling that the majority has disregarded those time-honored precedents and instead fashioned a new rule: evidence that a defendant had sufficient time for a second look is-on its own-sufficient evidence to prove the elements of premeditation **255 and deliberation. The majority cites Gonzalez , 468 Mich. at 641, 664 N.W.2d 159, and Tilley , 405 Mich. at 45, 273 N.W.2d 471, for the proposition that "[p]remeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " Ante at 566. But this misstates the rule. Gonzalez held that time for a second look "is necessary to establish premeditation and deliberation." Gonzalez , 468 Mich. at 641, 664 N.W.2d 159, quoting Tilley , 405 Mich. at 45, 273 N.W.2d 471, in turn quoting Hoffmeister , 394 Mich. at 161, 229 N.W.2d 305 (quotation marks omitted; emphasis added). Until today, we have never held that time for a second look establishes premeditation and deliberation. It was necessary, not sufficient.
Now it seems the opportunity to premeditate creates a rebuttable presumption of premeditation and deliberation. In effect, the majority holds that the jury can infer premeditation based on the opportunity for a second look. And inference of premeditation in turn permits the jury to infer deliberation. The burden then shifts *573 to the defendant to prove that he did not premeditate. That's not our system.
And even if it were, proving premeditation alone is not enough. The statute requires that the prosecution establish that the premeditation was also of the requisite quality -namely, that the perpetrator's decision to kill was the product of deliberate thought-that he "measure[d] and evaluate[d] the major facets" of the decision to kill. See Bass , 317 Mich. App. at 266, 893 N.W.2d 140 (quotation marks and citation omitted). See also 2 LaFave, Substantive Criminal Law (3d ed.), § 14.7(a), pp. 649-650 ("It is not easy to give a meaningful definition of the words 'premeditate' and 'deliberate' as they are used in connection with first-degree murder. Perhaps **256 the best that can be said of 'deliberation' is that it requires a cool mind that is capable of reflection, and of 'premeditation' that it requires that the one with the cool mind did in fact reflect, at least for a short period of time before his act of killing.").[2]
Where the majority opinion does address deliberation as a separate element of first-degree murder, it **257 appears to understand it as merely acting intentionally or even voluntarily. See, e.g., ante at 568 ("Evidence of defendant's conflicting statements and that he was the initial aggressor allowed the jury to infer that he acted without provocation and in a cool state of mind rather than on impulse ...."). Of course, acting volitionally or intentionally, or even with malice, is not enough to elevate a homicide to first-degree murder; an involuntary stabbing would not be criminal at all. And the intent to kill is not unique to first-degree murder.
The rule announced today is a departure from our precedent. We rejected the sufficiency of similar evidence in Hoffmeister , 394 Mich. 155, 229 N.W.2d 305. There, the victim's car and the defendant's car had been seen parked together off of I-96 near an exit ramp. The evidence established that the victim and the defendant had a *574 brief encounter during which the victim was stabbed multiple times. The wounded victim drove about a quarter mile to her friend's house and then died within the hour.
We held that the nature and number of wounds, plus the fact that the defendant spent "several moments" with the victim, was not sufficient evidence to allow the jury to reasonably infer premeditation and deliberation. Id . at 159, 229 N.W.2d 305. We reasoned that the number of wounds and brutality was not enough to prove premeditation and deliberation, because such a killing is just as likely (or even more likely) to have been impulsive. And nothing in the record supported the theory that the defendant took a moment to measure and evaluate what he was doing. Id . at 159-160, 229 N.W.2d 305. "The violence and multiple wounds, while more than ample to show an intent to kill, cannot standing alone support an inference of a calmly calculated plan to kill requisite for premeditation and deliberation, as contrasted with **258 an impulsive and senseless, albeit sustained, frenzy." Id . at 160, 229 N.W.2d 305 (quotation marks and citation omitted). Moreover, although the timeline showed that the defendant and the victim were together for some time before the murder, which "le[ft] open the possibility of premeditation and deliberation," id . at 161, 229 N.W.2d 305, there was no evidence from which to conclude that the killing was, in fact, premeditated and deliberate; that there could have been sufficient time for deliberate thought "is not evidence that appellant actually did cogitate and mull over the intent to kill," id . (quotation marks and citation omitted).
The majority claims it is distinguishing Hoffmeister , while announcing a standard that effectively overrules it. Hoffmeister held that evidence is insufficient when it merely leaves open the possibility of premeditation and deliberation. Now the opposite is true with no stare decisis analysis and no explanation for the dislocation of that precedent.
Here, like in Hoffmeister , the evidence-at most-permitted the jury to infer that the defendant may have had sufficient time to reflect. From there, the jury could only speculate whether he engaged in deliberate thought before deciding to act. The victim and the defendant were not previously acquainted. And the violence and multiple wounds cannot, on their own, support the inference of premeditation and deliberation. We know that from Hoffmeister . The gruesome physical evidence allowed the jury to infer a single fact-that the defendant might have had sufficient time to take a second look. But beyond that, the jury could only speculate between two possibilities: either the defendant did premeditate and deliberate, or he did not. The determination is no better than a coin flip. That's not proof beyond a reasonable doubt.
**259 The majority's blow-by-blow account of its theory of the murder fails to identify any evidence from which to infer that the defendant thought about his intent to kill before deciding to act. For example, even resolving conflicting evidence in favor of the prosecution, the majority's conclusion that the defendant was the initial aggressor is relevant only to a lack of adequate provocation. This might be helpful if the dispute were between voluntary manslaughter and second-degree murder, because "provocation is not an element of voluntary manslaughter. Rather, provocation is the circumstance that negates the presence of malice." People v. Mendoza , 468 Mich. 527, 536, 664 N.W.2d 685 (2003) (citation omitted). But both first- and second-degree murder share the element of malice. That the defendant acted with malice is beside the point.
*575 First principles in the elements of each level of homicide are important. Every murder involves at least two elements: the killing of a living person with malice aforethought. Maher v. People , 10 Mich. 212, 218 (1862).[3] The killing of another is the actus reus , and malice aforethought is the mens rea , or "guilty mind." 1 LaFave, Substantive Criminal Law (3d ed.), § 5.1, p. 446. Second-degree murder requires acting with one of three forms of malice aforethought: intent to kill, intent to do serious bodily injury, or a depraved heart. 2 LaFave, § 14.1, p. 566. First-degree murder requires not only that the perpetrator intend to kill, but also that he premeditated the killing and deliberated about it. Id . at § 14.7(a), p. 649. Therefore, intent-to-kill **260 murder without the added elements of premeditation and deliberation can only be second-degree murder. Id . at § 14.7(e), p. 664.[4] Thus, even textbook second-degree murder involves some amount of "thought," in the sense that the perpetrator intends to kill and acts on it. In short, the defendant's admission that he intended to kill McMillan means that he must be guilty of murder. But it tells us nothing about when, how, or why he decided to act on his intent to kill-the variables the prosecution needed to fill in to assign first- or second-degree culpability to the murder.[5] **261 The majority also suggests that the "location and depth of the victim's stab wounds support an inference that defendant thought about, measured, and evaluated his options." Ante at 569. And indeed, it may be permissible to infer premeditation and deliberation when "the manner of *576 killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design." 2 LaFave, § 14.7(a), p. 653.[6] Thus, the question here is whether the jury could reasonably infer that the defendant's admittedly intentional actions were deliberate and calculated based on some special quality of the physical evidence. The majority vaguely refers to the "location" of the wounds, as well as to the force required to inflict them, as evidence that permitted the jury to infer both premeditation and deliberation. Ante at 569. But the majority itself recognizes that this shows nothing more than the opportunity for a second look. I don't know how that evidence is any different in quality from the evidence in Hoffmeister , in which we held that the evidence "le[ft] open the possibility of premeditation and deliberation" but found no basis in the record to conclude that the defendant actually took a second look. Hoffmeister , 394 Mich. at 161, 229 N.W.2d 305. **262 The majority's decision today makes the difference between first- and second-degree murder hard to discern. And the statute is not the problem. "Close cases can be imagined under virtually any statute" and are "addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." United States v. Williams , 553 U.S. 285, 306, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). But the majority's gloss so blurs the line between first- and second-degree murder that it renders vague an otherwise clear statute. See Grayned v. City of Rockford , 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("[L]aws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.") (citation omitted). When there is no distinction in the proof required for each crime, the guarantee that "close cases" must be proved beyond a reasonable doubt is hollow. If intent to kill plus any time window during which one could have accomplished premeditation and deliberation now amounts to proof beyond a reasonable doubt, then I find it hard to imagine what second-degree murder wouldn't also be a first-degree murder. That can't be constitutional.[7]
There are few principles of federal constitutional **263 law more clearly established than the accused's protection against conviction *577 "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship , 397 U.S. at 364, 90 S.Ct. 1068. And "[t]he constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless. Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." Jackson , 443 U.S. at 323-324, 99 S.Ct. 2781 (citation omitted). So too even a heinous killer.
As I said at the start, this was a brutal crime. But even in cases involving the most horrific facts, courts **264 try cases and not people, and in each and every case the Constitution requires proof beyond a reasonable doubt of every element. Shortcuts are tempting, but the rule of law doesn't allow them. There is simply no basis in the evidence to infer proof beyond a reasonable doubt that the defendant's decision to kill McMillan was premeditated and deliberated. The Court of Appeals was correct. I would affirm.
David F. Viviano, J., agrees.

The prosecution cites two cases in which the jury could have inferred that the defendant had time to take a second look based on the manner of killing. In People v. Gonzalez , we said that a slow means of death would give the defendant time to rethink his actions and could be evidence of premeditation. Gonzalez , 468 Mich. at 641-642, 664 N.W.2d 159. And the Court of Appeals, in People v. Unger , stated that a jury could infer that the defendant had time to take a second look based on the "nature and number of a victim's wounds." People v. Unger , 278 Mich. App. 210, 231, 749 N.W.2d 272 (2008). But neither case is helpful. Premeditation was not determined in those cases on the basis of sufficient time alone. In Gonzalez , the defendant visited the victim's apartment and then returned later that day to rape and murder her. And in Unger , the defendant murdered his wife during the pendency of their divorce by pushing her off a rooftop deck; the prosecution presented expert testimony that the victim had not died from her head injuries but had drowned after being dragged or moved into the lake.

We have long held that deliberation requires rational thought, or a degree of calculation. Drawing on the common law, we have generally described deliberation in terms of cool rationality (versus hot emotion). " '[P]remeditation and deliberation characterize a thought process undisturbed by hot blood.' " Vail , 393 Mich. at 468-469, 227 N.W.2d 535, quoting People v. Morrin , 31 Mich. App. 301, 329-330, 187 N.W.2d 434 (1971).
[M]urder is not always attended with the same degree of wicked design, or, to speak more accurately, with the same degree of malice. It may be committed in cold blood, and with much calculation, and it may be committed on a sudden impulse of passion, where the intent is formed and executed in the heat of blood, without any sufficient provocation to extenuate the degree of the offense to manslaughter. In both of these instances, and in the intermediate cases where the design is of greater or less duration, there is the actual intent to take life. [People v. Scott , 6 Mich. 287, 293 (1859).]
In Nye v. People , 35 Mich. 16, 19 (1876), we explained:
In dividing murder into degrees, its common-law qualities are not changed, but (except in special cases) the division is chiefly between cases where the malice aforethought is deliberate and where it is not. It was rightly considered that what is done against life deliberately indicates a much more depraved character and purpose than what is done hastily or without contrivance. But it is a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse.
See also People v. Martin , 472 Mich. 930, 932, 697 N.W.2d 520 (2005) ( Markman , J., dissenting) ("[E]ven assuming defendant did in fact shoot his father because he was 'mad,' the statement still fails to give rise to an inference of premeditation. Rather, such a statement is inconsistent with the required showing that defendant be undisturbed by hot blood."); Tilley , 405 Mich. at 44-45, 273 N.W.2d 471 ("[W]hen a homicide occurs during a sudden affray this Court has found that it would be 'a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse.' ") (citation omitted).

And "aforethought" is somewhat superfluous "since malice need exist only at the time the homicidal act is committed .... Nevertheless, statutes still use the language 'malice aforethought' to define murder, the apparent intent being to incorporate by reference the vast body of law that has been developed over the centuries." 2 Wharton's Criminal Law (15th ed.), § 139, p. 246.

Michigan does not have some outlier statutory approach; we are in full accordance with the scholarly treatises. See People v. Dykhouse , 418 Mich. 488, 495, 345 N.W.2d 150 (1984) ; People v. Aaron , 409 Mich. 672, 713-714, 299 N.W.2d 304 (1980) ; Gillespie, Michigan Criminal Law & Procedure, Practice Deskbook (2d ed.), §§ 5:255-5:258, 5:273, pp. 264-265, 267; 2 Wharton's Criminal Law, §§ 139, 142, pp. 243-247, 257-278.

The majority cites People v. Holmes , 111 Mich. 364, 372, 69 N.W. 501 (1896), to support its claim that evidence that the defendant was the initial aggressor permits the jury to infer premeditation and deliberation. But the excerpt the majority cites from Holmes is, in fact, quoting Scott , 6 Mich. at 295. Scott 's holding, however, concerned the elements required to prove assault with intent to murder, so it's dubious whether the quoted language parses the differences between first- and second-degree murder. And the quotation is taken out of context. Immediately before the majority's quoted text, the Scott Court makes clear that it is discussing whether a homicide triggered by inadequate provocation should be murder or manslaughter:
Voluntary manslaughter often involves a direct intent to kill, but the law reduces the grade of the offense because, looking at the frailty of human nature, it considers great provocations sufficient to excite the passions beyond the control of reason. But provocations often arise which are of less intensity, and are not in law regarded as sufficient to reduce the crime to manslaughter. If it appears that murder is committed upon a heat of passion engendered entirely by such provocations, and suddenly conceived, such a murder can not properly be called deliberate. But whenever murder is intentionally committed without serious provocation, and under circumstances which do not reasonably account for such an excitement of passion as naturally deprives men of deliberation, common experience teaches us that such an act is wanton, and its perpetrator responsible for it, as in other cases of cold-blooded crime. The time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. [Scott , 6 Mich. at 295.]

Inferring premeditation and deliberation from "the manner of killing ... require[s] ... evidence (usually based upon examination of the victim's body) showing that the wounds were deliberately placed at vital areas of the body. The mere fact that the killing was attended by much violence or that a great many wounds were inflicted is not relevant in this regard, as such a killing is just as likely (or perhaps more likely) to have been on impulse." 2 LaFave, § 14.7(a), pp. 655-656, citing Hoffmeister , 394 Mich. 155, 229 N.W.2d 305.

Indeed, the Arizona Supreme Court held that it was duty-bound to reject as unconstitutionally vague the same reading of its murder statute that the majority adopts today:
We conclude, as did the court of appeals, that if the only difference between first and second degree murder is the mere passage of time, and that length of time can be "as instantaneous as successive thoughts of the mind," then there is no meaningful distinction between first and second degree murder. Such an interpretation would relieve the state of its burden to prove actual reflection and would render the first degree murder statute impermissibly vague and therefore unconstitutional under the United States and Arizona Constitutions.
... While the phrase "proof of actual reflection is not required" can be interpreted in a way that relieves the state of the burden of proving reflection, such an interpretation would not pass constitutional scrutiny, and the legislature could not have intended such a result. Accordingly, we conclude that the legislature intended to relieve the state of the burden of proving a defendant's thought processes by direct evidence. It intended for premeditation, and the reflection that it requires, to mean more than the mere passage of time.
We find support for our interpretation in the admonition that "an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." This language distinguishes impulsive killings from planned or deliberated killings and confirms the legislature's intent that premeditation be more than just a snap decision made in the heat of passion.
Our decision today distinguishes the element of premeditation from the evidence that might establish that element. Although the mere passage of time suggests that a defendant premeditated-and the state might be able to convince a jury to make that inference-the passage of time is not, in and of itself, premeditation. To allow the state to establish the element of premeditation by merely proving that sufficient time passed to permit reflection would be to essentially relieve the state of its burden to establish the sole element that distinguishes between first and second degree murder. [State v. Thompson , 204 Ariz. 471, 478, 65 P.3d 420 (2003) (en banc) (citations omitted).]