*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAWN MICHAEL HIGHSHAW,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2020

No. 342129
Saginaw Circuit Court
LC No. 16-042675-FC

Before: O'BRIEN, P.J., and M. J. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant, Shawn Highshaw, appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

On November 16, 2012, 16-year-old Walter Riley was shot and killed on Rust Street in Saginaw County. The cause of death was multiple gunshot wounds, consisting of five shots to his head, one to the right side of the front of his chest, one to the left side of his back, one to the back of his right shoulder, and one to his forearm. At trial, two eyewitnesses testified that they were walking on Rust Street when they heard a loud argument between two individuals, whom they identified as Highshaw and Riley. One eyewitness saw Highshaw pull out a silver and gray pistol and shoot Riley. That witness "took off running" and then heard two or three additional gunshots. The second eyewitness did not see Highshaw fire the first shot. However, she saw Highshaw standing over Riley and shooting at him at least three more times while he was on the ground. Both eyewitnesses initially did not disclose what they observed because they were afraid of retaliation.

The defense impeached the eyewitnesses testimony, noting the length of time between the shooting and their identification, their failure to identify Highshaw as the shooter in photographic line-ups, and the fact that one witness was facing criminal charges when she came forward with her identification of Highshaw as the shooter. In addition, Highshaw testified that he did not shoot

-1-

Riley, but he could not remember where he was when Riley was shot. Highshaw further presented evidence that he had no "beef" with Riley, they barely knew each other, and that he had no animosity toward the teenager.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Highshaw argues that there is insufficient evidence to support his first-degree premeditated murder conviction. "A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gains*, 306 Mich App 289, 296; 856 NW2d 222 (2014). This proof can derive from circumstantial evidence and reasonable inferences arising from that evidence. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

### B. ANALYSIS

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (quotation marks and citation omitted). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *People v Oros*, 502 Mich 229, 242; 917 NW2d 559 (2018) (quotation marks and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, it is often said that premeditation and deliberation require only a brief moment of thought or a matter of seconds." *Id*. at 243-243 (quotation marks, alterations, and citations omitted). If the *only* evidence of premeditation and deliberation is the number of wounds inflicted on the murder victim, then the evidence would be insufficient because there would be "no basis for the jury to conclude that the defendant had adequate time for a second look. *Id*. at 244; see also *People v Hoffmeister*, 394 Mich 155, 159; 229 NW2d 305 (1975) (recognizing that "[t]he violence and multiple wounds, while more than ample to show an intent to kill, cannot *standing alone* support an inference of a calmly calculated plan to kill requisite for premeditation and deliberation, as contrasted with an impulsive and senseless, albeit sustained, frenzy") (quotation marks and citation omitted; emphasis added).

In *Oros*, our Supreme Court found sufficient evidence of deliberation and premeditation where, in addition to the fact that the victim was stabbed 29 times, there was evidence that the defendant was the initial aggressor, that he had to obtain the kitchen knife used to kill the victim, that he stabbed the victim from different positions, and used some degree of force to both stab and retract the knife while inflicting the successive stab wounds. *Oros*, 502 Mich at 245-249. Similarly, in this case the evidence of premeditation and deliberation included more than just the number of wounds inflicted on Riley. Specifically, although there was evidence that Riley and

Highshaw were having a loud argument before the shooting, the record is devoid of any evidence suggesting that Riley was the initial aggressor. Instead, the record reflects that during a verbal dispute, Highshaw drew a firearm, aimed it at Riley and fired the gun multiple times. Based on that, the jury could infer that Highshaw had an opportunity to take a second look after drawing his gun and aiming it. They could also infer an opportunity to take a second look based on the fact that after Riley fell to the ground, Highshaw stood over him and continued to shoot him. Moreover, considering that five of the shots were to Riley's head, it is reasonable to infer that Highshaw was not firing blindly. He took the time to ensure that each shot hit where he intended. Therefore, when viewed in the light most favorable to the jury's verdict, the evidence is sufficient to support Highshaw's first-degree murder conviction.

## III. NEWLY-DISCOVERED EVIDENCE

### A. STANDARD OF REVIEW

Highshaw also argues that the trial court abused its discretion by denying his motion for a new trial based upon newly discovered evidence. In support of his claim, he filed a motion in this Court seeking a remand for further proceedings in the trial court. He attached to his motion a June 2018 affidavit he received from Demont Barnes, an inmate incarcerated at the same facility as Highshaw was incarcerated. Barnes averred that he had witnessed his cousin, a man named Howard Walker, shoot and kill Riley. This Court granted Highshaw's motion and remanded to the trial court.[1] Thereafter, the trial court held an evidentiary hearing, taking testimony from Barnes. Following the hearing, the trial court denied Highshaw's request for a new trial, finding that Barnes was not a credible witness and that, even if he was credible, the new evidence would not make a different result probable on retrial.

We review for an abuse of discretion a trial court's decision to deny a motion for a new trial. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Sharpe*, 502 Mich 313, 324; 918 NW2d 504 (2018). We review a trial court's factual findings for clear error. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016).

### B. ANALYSIS

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). Motions for a new trial based on newly-discovered evidence are disfavored because parties should use "care, diligence, and vigilance in securing and presenting evidence." *People v Rao*, 491 Mich 271, 280; 815 NW2d 105 (2012) (quotation marks and citations omitted). "For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not

---

[1] *People v Highshaw,* unpublished order of the Court of Appeals, entered September 28, 2018 (Docket No. 342129).

cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Cress*, 468 Mich at 692 (quotation marks and citations omitted). The defendant bears the burden of satisfying all four elements. *Rao*, 491 Mich at 279.

Relevant to this appeal, the trial court found that Highshaw had failed to show that the new evidence would make a different result probable on retrial, i.e., that he had failed to satisfy the fourth element set forth in *Cress*. In *People v Johnson*, 502 Mich 541, 566-567; 918 NW2d 676 (2018), our Supreme Court explained:

> In order to determine whether newly discovered evidence makes a different result probable on retrial, a trial court must first determine whether the evidence is credible. In making this assessment, the trial court should consider all relevant factors tending to either bolster or diminish the veracity of the witness's testimony. A trial court's function is limited when reviewing newly discovered evidence, as it is not the ultimate fact-finder; should a trial court grant a motion for relief from judgment, the case would be remanded for retrial, not dismissal. In other words, a trial court's credibility determination is concerned with whether a reasonable juror could find the testimony credible on retrial. [Citations omitted.]

In its written opinion, the court found that a reasonable juror would not find Barnes's testimony credible on retrial. The court noted that Barnes testified that he and Walker left their aunt's house between noon and 1:00 p.m. on the day of the shooting. Barnes testified that he and Walker met up with Riley and that the three of them then walked to the place where Riley was murdered. Barnes expressly stated that he did not go to the M&D Market with Walker and Riley. Surveillance video in the area around the market, however, depicted Walker and Riley—but not Barnes—in the area shortly before the shooting. Additionally, Walker, who was questioned after the shooting, admitted to being in the area with Riley, but stated that Riley left with someone named "Dre." Walker did not mention Barnes as being present before or after Walker's interaction with Riley at the market. When questioned about the discrepancy between his testimony and the video surveillance, Barnes repeated that he, himself, was not at the market so he could not say what happened at the market. He also stated that "They was walking together. I don't know nothing about that." Based on the foregoing, the trial court found that Barnes testimony was not credible because it "undeniably conflict[ed]" with the unrefuted surveillance evidence placing Walker and Riley at the market at a time when Barnes claimed the three of them were together. Because the basis for the court's factual determination is rooted in the record, we are not left with a definite and firm conviction that a mistake was made. See *id*. at 569 (indicating that a trial court's factual determinations must be "rooted" in the evidence presented and that it cannot be based on speculation).

Next, at the hearing, Barnes testified that he told his sister that Walker had shot Riley. He stated that he did not tell anyone else, and he expressly stated that he did not tell Walker's mother. Yet, in a written message, he stated that Walker's mother, in fact, supported his efforts to exonerate Highshaw. At the hearing, he explained the written message was a "typo or something." The court found his explanation implausible, noting that his testimony was not credible. Again, the court's factual determination is supported by the record evidence.

-4-

Finally, the court found that Barnes's testimony regarding $1,800 he received after this Court remanded the case to the trial court to consider whether Barnes's affidavit was newly-discovered evidence entitling Highshaw to a new trial. Barnes was unable to answer where the money came from, stating that he could not remember but that it definitely did not come from Highshaw. Given his evasiveness on the issue, and the unlikeliness of him not remembering who he received a large sum of money from, the court found that his credibility as a witness was further damaged. This finding is supported by the record.

In sum, each of the court's reasons for finding that Barnes was not credible were supported by the record. On appeal, Highshaw does not directly challenge any of the court's reasons for finding that Barnes was not credible. Instead, Highshaw argues that the court's finding was clearly erroneous because Barnes was not impeached, had no reason to lie and nothing to gain by coming forward, and because Barnes's motivation in coming forward was to prevent injustice Highshaw also proclaims that Barnes's testimony that Walker had a motive to kill Riley was "compelling and credible," whereas the trial testimony showed no animosity between Highsahw and Riley.

We are baffled by the claim that the prosecution did not impeach Barnes's testimony. At the evidentiary hearing, the prosecution impeached Barnes based on his post-incarceration friendship with Highshaw. The prosecution also impeached Barnes based on statements he made that contradicted his testimony and with video evidence directly contradicting parts of his testimony. There is simply no basis in the record to support a finding that Barnes's testimony was not impeached. Likewise, given that Barnes had a friendship with Highshaw and considering that Barnes received $1,800 from someone after the case was remanded, the record also does not support that Barnes had no reason to lie. A jury could infer that the money was received in exchange for Barnes's testimony identifying his deceased cousin as the shooter. Finally, although Highshaw believes that Barnes's testimony regarding the motive for the shooting was "compelling" and "credible," his evaluation of the evidence ignores the aspects of Barnes's testimony that led the court to find that Barnes was not credible.

Moreover, Highshaw fails to address the court's determination that, even if Barnes's testimony had been credible, there is not a reasonable probability that a different outcome would have resulted if he had testified at the trial. The court found:

> First, no reasonable jury would believe that Barnes was with Walker the entire afternoon of November 12, 2012, in consideration of the fact that Walker and Riley (and others) were present at and near the M&D Market. Second, Barnes had to have seen [the eyewitnesses] standing on the sidewalk at the scene of the shooting when Barnes walked, then ran away from the incident, otherwise a jury would have to ignore and disregard virtually all of [the eyewitnesses'] uncontroverted testimony. Finally, without Barnes providing any rational explanation for receiving $1,8000, a jury would have to consider the reasonable inference that [Highshaw] either directly or indirectly provided Barnes the money in exchange for his affidavit and testimony. When added to other factors, such as the alleged shooter, Walker, being unable to testify [because he died prior to Barnes identifying him as the shooter]; Barnes's description of the shooter's pistol being different from [the eyewitness's description of it]; and [both eyewitnesses'] credible testimony about

being certain of [Highshaw's] identity at the scene of the shooting, a different result is not only improbable, but implausible as well.

Given Highshaw's failure to address this part of the court's ruling, he has abandoned any challenge to it. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Furthermore, even if we were to consider the ruling as properly challenged on appeal, there is no clear error in the court's finding. The trial court evaluated the entirety of the evidence that was presented at Highshaw's trial and considered it in conjunction with Barnes's testimony and affidavit. Given the record, the court did not clearly err by finding that the new evidence would not make a different result probable on retrial.

## IV. MOTION TO SUPPRESS IDENTIFICATION

### A. STANDARD OF REVIEW

Highshaw argues that the trial court erred by denying his motion to suppress the eyewitnesses' identification of him as the shooter. "A trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *Blevins*, 314 Mich App at 348.

### B. ANALYSIS

Highshaw argues that the trial court should have determined whether the identification was unduly suggestive under the standards set forth in *Manson v Brathwaite*, 432 US 98, 114-116; 97 S Ct 2243; 53 L Ed 2d 140 (1977) and *People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998). In *Manson*, the United States Supreme Court held that when a pretrial identification procedure is unduly suggestive, the trial court must examine the totality of the circumstance surrounding a subsequent in-court identification to determine whether the in-court identification is sufficiently reliable to be admitted into evidence. *Manson*, 432 US at 109, 114. Likewise, in *Colon*, this Court explained that an in-court identification could be excluded if the witness was "exposed to an impermissibly suggestive pretrial identification procedure." *Colon*, 233 Mich App at 304. The burden is on the defendant to "show that in light of the totality of the circumstances, the procedure used was so impermissibly suggestive as to have led to a substantial likelihood of misidentification." *Id*.

On appeal, Highshaw has directed this Court to nothing in the record indicating that the pretrial identification procedure was "so impermissibly suggestive as to have led to a substantial likelihood of misidentification." Consequently, this issue is abandoned. See *Kelly*, 231 Mich App at 640-641. Moreover, Highshaw's argument lacks merit because there is no record evidence that the photographic identification procedure was unduly suggestive. Furthermore, because the eyewitnesses never identified Highshaw in the photographic lineup, the jury was to determine the credibility of their in-court identifications. See *People v Barclay*, 208 Mich App 670, 676; 528 NW2d 842 (1995).

## V. ADMISSION OF EVIDENCE

### A. STANDARD OF REVIEW

Highshaw next argues that the trial court abused its discretion by admitting evidence of the "no snitch code." He indicates that such evidence was not relevant under MRE 401 and, even if relevant, it should have been excluded under MRE 403's balancing test because it was "extremely prejudicial." We review a trial court's decision to admit evidence for an abuse of discretion but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). An abuse of discretion exists if a trial court's decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

### B. ANALYSIS

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Generally, relevant evidence is admissible. MRE 402. And it is well-established that a witness's bias and credibility are almost always relevant. *People v Layher*, 464 Mich 756, 762-765; 631 NW2d 281 (2001). However, under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" MRE 403.

Here, both eyewitnesses testified that they did not initially tell anyone that they saw Highshaw shoot and kill Riley. They also both testified that they did not come forward right away because they did not want to be labeled as "snitches." They feared that if Highshaw learned that they went to the police, he would physically harm them or their families. Thus, evidence of the no-snitch code was relevant to their credibility because it explained the delay between the shooting and their decision to come forward and identify Highshaw as the shooter.

On appeal, Highshaw argues that this evidence was severely prejudicial because it left the jury with the impression that they did not come forward because they were afraid for themselves and their family members and because it bolstered their testimony. We agree that the testimony was prejudicial, i.e., damaging, to Highshaw in that it allowed the jury to make a favorable credibility determination. Yet, in order to be excluded under MRE 403's balancing test, the probative value of the evidence must be "*substantially outweighed* by the danger of *unfair* prejudice." MRE 403 (emphasis added). In this case, the evidence regarding the no-snitch code had significant probative value because it explained why the witnesses waited several months before identifying Highshaw as the shooter. Moreover, there is nothing on the record to indicate that it was unfairly prejudicial, i.e., that it would be "given undue or preemptive weight" by the jury, *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002).[2]

---

[2] We note that, on appeal, Highshaw does not actually argue that the evidence is *unfairly* prejudicial. Instead, he states that the evidence was both extremely and severely prejudicial

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ James Robert Redford

---

because the evidence was used to explain the delay in identifying him as the shooter, thereby bolstering the eyewitnesses credibility. There is no basis under MRE 403 to exclude relevant evidence merely because it was extremely or severely prejudicial.