697 N.W.2d 520 (2005)
472 Mich. 930
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Gregory MARTIN, Defendant-Appellant.
Docket No. 126937. COA No. 248158.
Supreme Court of Michigan.
June 17, 2005.
The defendant filed an application for leave to appeal and this Court ordered the prosecutor to answer the application for leave to appeal, specifically addressing the sufficiency of the evidence to sustain a conviction of first-degree murder. The defendant's application and the prosecutor's response to this Court's April 14, 2005 order to answer have been considered.
*521 On order of the Court, the application for leave to appeal the August 10, 2004 judgment of the Court of Appeals, 2004 WL 1779116 is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
MARKMAN, J., dissents and states as follows:
I respectfully dissent. Because I believe the record contains insufficient evidence to establish the premeditation and deliberation necessary to satisfy the elements of first-degree murder, I would vacate defendant's conviction of first-degree murder and remand to the trial court for the entry of a judgment of conviction of second-degree murder.
Defendant initially gave two exculpatory statements to the police. In his third statement to the police, defendant first stated that his father came home "ranting and raving" while defendant was on the telephone with his girlfriend. He asked his father a question, and his father responded by throwing a pan that hit defendant in the head. Defendant claimed his father then asked for the shotgun, in case someone tried to follow him into the apartment. Defendant reached under the couch to retrieve it, thought to himself that he better unload it, and began removing the shells. Defendant claimed he had difficulty removing the last shell, and, in his attempt to remove it, the gun discharged, hitting his father. Defendant sat down on the couch for what he thought was only a minute, but was in reality over an hour (defendant claimed to have blacked out, having consumed a pint of vodka). It was then that he called 911. Defendant's statement then concludes with the following series of responses, which recant his claim that the shooting occurred while he was attempting to remove the last shell:

Q. Mr. Martin, did you shoot your father?

A. Yes.

Q. Mr. Martin, did I force you to say that?

A. No.

Q. Anything else you can tell me?

A. No, I'm sorry, I was mad, I was pissed off.

Q. What do you mean you were pissed off?

A. I was mad and I shot him.

Q. So you did not try to take the rounds out of the shotgun?

A. No, I shot him because I was mad.

Q. So this was not an accident?

A. No, I got the shotgun from under the couch and I shot him....

Q. Were any blows thrown from hands used?

A. No.

Q. Is there anything else?

A. No, I shot him.
The entirety of this third statement was read into the record at trial.
In support of a finding of premeditation, the Court of Appeals made a number of findings that are not supported by the record. I will address them individually:
[1] In this case, the evidence showed that defendant and his father had a prior relationship characterized by his father's frequent rantings and ravings. This evidence supports an inference of premeditation and deliberation insofar that it shows that defendant had a motive to kill his father. [Slip op at 2.]
However, the record does not reflect that these alleged rantings and ravings were directed at defendant; rather, the record shows that his father tended to go off on rants about others. Specifically, defendant's statements indicate that his father *522 "sometimes ... just pulls stuff out of the air" and that on this occasion, his father was ranting about women drivers and the stupidity of one of his father's friends. A review of defendant's testimony at trial reveals no indication of frequent rantings and ravings that characterized the victim's relationship with defendant. As such, the alleged rantings and ravings of his father provided defendant with no motive for the killing, and thus do not support in any way a finding of premeditation. While defendant may have thought to himself "here we go again" when his father began to rant on the night in question, defendant's subvocalized thought in this regard is hardly sufficient to constitute evidence of premeditation.
[2] Regarding the circumstances of the killing, defendant admitted that he hid the gun under the couch where he was lying immediately before the shooting. [Slip op at 2.]
However, the record contains no testimony or evidence to support such a finding. Rather, in defendant's first statement, he responded to the question of where the gun had come from by saying "I had it hidden and emptied under the couch for safety purposes." The statement did not indicate that the "safety" he sought was from his father, as opposed to general safety concerns that would motivate one to keep a gun in one's home. Nothing in the record suggests that defendant hid the gun as part of any premeditated plan to kill his father.
Nor does the record reflect when defendant hid the gun under the couch. Testimony that defendant hid the gun under the couch shortly before his father arrived home (as opposed to weeks or even months before the shooting) would tend to support an inference of premeditation; however, the record contains no mention of when the gun was placed under the couch. As such, no inference of premeditation can arise by virtue of the fact that the shotgun had been placed under the couch at some indefinite time before the shooting.
[3] The evidence also permitted an inference that a sufficient amount of time elapsed before defendant reached under the couch to get the gun and, thus, had sufficient time to contemplate his actions and take a second look. [Slip op at 2.]
All three of defendant's statements to the police, including the inculpatory third statement, indicate that defendant withdrew the gun from under the couch in response to his father's demand that he produce it. To show first-degree premeditated murder, "[s]ome time span between [the] initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation." People v. Gonzalez, 468 Mich. 636, 641, 664 N.W.2d 159 (2003) (internal citations and quotations omitted). Here, there is no evidence of the duration of any time span between those two events. In fact, the record does not identify any event, other than the victim's demand that defendant give him the gun, from which to measure the time between formation of intent and action.
[4] Defendant's post-homicide conduct also supports a finding of premeditation and deliberation. The evidence permitted the jury to conclude that defendant attempted to conceal the crime by deliberately breaking the gun and then fabricating a story about an accidental shooting. An attempt to conceal a killing may support a finding of premeditation and deliberation. [Slip op at 2.]
However, an attempt to conceal is only indicative of premeditation where the attempt to conceal comes before the killing, or where other evidence suggests that the defendant had an opportunity to take a *523 second look. See Gonzalez, supra; see also People v. Johnson, 460 Mich. 720, 597 N.W.2d 73 (1999) (on which the Gonzalez Court relied). Otherwise, postkilling concealment is equally consistent with an effort to disguise a second-degree murder.
Finally, even assuming defendant did in fact shoot his father because he was "mad," the statement still fails to give rise to an inference of premeditation. Rather, such a statement is inconsistent with the required showing that defendant be undisturbed by hot blood.
In light of the misunderstanding of the record by the Court of Appeals, and the lack of evidence that supports a finding of premeditation, I would vacate defendant's conviction of first-degree murder and remand the case to the trial court for the entry of a judgment of conviction of second-degree murder.
MICHAEL F. CAVANAGH and MARILYN J. KELLY, JJ., join the statement of MARKMAN, J.