# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

Reporter of Decisions:
Kathryn L. Loomis

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

PEOPLE v OROS

Docket No. 156241. Argued on application for leave to appeal March 7, 2018. Decided July 5, 2018.

Christopher A. Oros was convicted following a jury trial in the Kalamazoo Circuit Court of first-degree premeditated murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), first-degree arson, MCL 750.72, second-degree home invasion, MCL 750.110a(3), and escape while awaiting trial, MCL 750.197(2). The trial court, Paul J. Bridenstine, J., sentenced defendant to life imprisonment without the possibility of parole for his first-degree premeditated and felony murder convictions, 25 to 40 years' imprisonment for his first-degree arson conviction, 10 to 22½ years' imprisonment for his second-degree home invasion conviction, and 2 to 6 years' imprisonment for his escape while awaiting trial conviction. Defendant appealed as of right his first-degree premeditated murder conviction in the Court of Appeals, arguing that insufficient evidence existed to sustain his jury conviction because the prosecution failed to present at trial any evidence from which the jury could reasonably find that he acted with premeditation and deliberation. In a published per curiam opinion issued June 8, 2017, the Court of Appeals, STEPHENS, P.J., and SHAPIRO and GADOLA, JJ., held that there was insufficient evidence to sustain defendant's first-degree premeditated murder jury conviction and reduced his conviction to second-degree murder. 320 Mich App 146 (2017). The Court of Appeals applied the factors set forth in *People v Schollaert*, 194 Mich App 158 (1992), and explained that it found the circumstances surrounding the killing as the most significant factor. The Court of Appeals rejected the prosecution's argument that defendant had adequate time to consciously reconsider his actions in a "second look," believing that *People v Hoffmeister*, 394 Mich 155 (1975), excluded the notion that premeditation could be formed between successive stab wounds. Therefore, the Court of Appeals vacated defendant's first-degree premeditated murder conviction, imposed a second-degree murder conviction, and ordered a remand to the trial court for sentencing as to that offense. The prosecution sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 501 Mich 883 (2017).

In an opinion by Justice WILDER, joined by Chief Justice MARKMAN and Justices ZAHRA, BERNSTEIN, and CLEMENT, the Supreme Court, in lieu of granting leave to appeal, *held*:

Given the record evidence presented at defendant's trial, a reasonable juror could have found that the killing was committed with premeditation and deliberation. Defendant's first-degree premeditated murder conviction and sentence must be reinstated.

1. When considering a sufficiency-of-the-evidence challenge, a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. To secure a conviction of first-degree premeditated murder, MCL 750.316(1)(a), the prosecution must establish beyond a reasonable doubt a murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing. The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation. To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.

2. The elements of premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a "second look." That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look. What constitutes sufficient evidence to support the elements of premeditation and deliberation may vary from case to case because the factual circumstances will vary, but the ultimate answer may be resolved in light of the entire factual record introduced at trial and determining whether reasonable inferences may be made to support the fact-finder's verdict.

3. In this case, a rational trier of fact had sufficient evidence from which to draw reasonable inferences that defendant acted with premeditation and deliberation. The prosecution presented evidence that directly conflicted with defendant's description of what transpired in the apartment, including that defendant did not have any head injuries consistent with his claim that the victim struck him over the head with a coffee mug and that shattered pieces of the coffee mug collected at the scene were DNA tested, revealing the presence of the victim's blood and hair—not defendant's. The jury chose to resolve the conflicting evidence in favor of the prosecution, and on appellate review the evidence contradicting defendant's version of the crime must be considered in a light most favorable to the prosecution, with every reasonable inference viewed in favor of the jury verdict. Evidence of defendant's conflicting statements and that he was the initial aggressor allowed the jury to infer that he acted without provocation and in a cool state of mind rather than on impulse when his assaultive conduct escalated from striking the victim in the head with a coffee mug to gaining control of a kitchen knife, to punching the victim in the face, to finally stabbing the victim 29 times to her death. An inference of each element of premeditation and deliberation could be drawn from this evidence—that is, defendant thought about killing the victim before proceeding to kill the victim, and defendant measured and evaluated his choices before proceeding to kill the victim.

4. By defendant's own admission, these acts were distinct and separate from one another. While it was not possible to pinpoint the exact moment defendant thought about killing the

victim and measured and evaluated his choices, the inference could be drawn that his decision to kill the victim and his evaluation of his options arose separately before he obtained a lethal weapon. It was possible that defendant could have thought about the killing before first striking the victim over the head with a coffee mug or when he punched the victim in the face. Either way, both acts supported the inference that defendant had and took time for reflection before proceeding to stab the victim because defendant had to think about obtaining the knife—a lethal weapon—to accomplish his desired act of killing the victim. Additionally, the prosecution argued that defendant may have retrieved the knife from the victim's kitchen, while defendant told the police that he obtained the knife from the victim herself after struggling with her for it; either way, a period of time between the initial homicidal intent and the ultimate killing existed, during which defendant could have taken a "second look." Likewise, it was reasonable to infer that defendant had the opportunity for a "second look" during the period of time that elapsed when he flipped the victim over to position her facedown on the floor, climbed onto her back, and then continued to stab her. It took thought and reflection to flip the victim over, which permitted an inference that defendant acted with both premeditation and deliberation. Moreover, the location and depth of the victim's stab wounds supported an inference that defendant thought about, measured, and evaluated his options; many of the stab wounds were anywhere from 2 to 5 inches deep, which would indicate the amount of force used to not only plunge the knife into the victim's body, but also to retract it. It was reasonable for a juror to infer that sufficient time existed between each stab wound to allow defendant the opportunity to take a "second look," and therefore it was reasonable for a juror to infer that the killing was committed with premeditation and deliberation. Accordingly, the jury had sufficient evidence from which it could conclude beyond a reasonable doubt that defendant was guilty of first-degree premeditated murder, and the Court of Appeals erred when it improperly usurped the role of the fact-finder and misapplied this Court's opinion in *Hoffmeister*. This holding is consistent with *Hoffmeister* because the sheer number of stab wounds alone did not establish the elements of premeditation and deliberation; rather, the jury could have reasonably inferred and found from the factual record—separate and distinct from the sheer number of stab wounds alone—that defendant had an opportunity to subject his actions to a "second look" and therefore acted with premeditation and deliberation.

Part II of the Court of Appeals' opinion reversed; defendant's first-degree premeditated murder conviction and sentence reinstated.

Justice MCCORMACK, joined by Justice VIVIANO, dissenting, would have affirmed the judgment of the Court of Appeals because there was insufficient evidence for a rational trier of fact to infer proof beyond a reasonable doubt that defendant's decision to kill the victim was premeditated and deliberated. The majority treated premeditation, deliberation, and intent to kill as fungible—thereby collapsing the distinction between first- and second-degree murder—and lost sight of the burden of proof when it held that the possibility that defendant could have premeditated and deliberated is all that is required. While a jury can make reasonable inferences to arrive at a verdict, the prosecution must produce sufficient evidence to make the jury's inferences reasonable; the inferences must have support in the record and cannot be arrived at by mere speculation. A deliberate and premeditated killing requires proof beyond merely thinking twice—the prosecutor must show that the perpetrator's thought process had the right timing (premeditated) and was of the right quality (deliberate). Time to take a second look is necessary, but not sufficient, for a finding of premeditation and deliberation. Sufficient opportunity to take

a second look is better thought of as a precondition for a finding of premeditation and deliberation: the prosecution must prove first that there was sufficient time to allow the defendant to take a "second look" after forming the intent to kill and, second, that the defendant did, in fact, premeditate before acting on the intent to kill. In short, premeditation requires some passage of time, but the passage of time does not prove premeditation, much less deliberation. In this case, the gruesome physical evidence allowed the jury to infer a single fact—that the defendant might have had sufficient time to take a second look. But beyond that, the jury could only speculate between two possibilities: either the defendant did premeditate and deliberate, or he did not. Because that determination was no better than a coin flip, the jury could not find proof beyond a reasonable doubt of premeditation and deliberation. Additionally, by announcing that the possibility of premeditation and deliberation is all that is required, the majority effectively overruled *Hoffmeister*, which held that evidence is insufficient when it merely leaves open the possibility of premeditation and deliberation. Proof beyond a reasonable doubt is required for every element of a crime, and in this case there was no basis in the evidence for a rational trier of fact to infer proof beyond a reasonable doubt that defendant's decision to kill the victim was premeditated and deliberated.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED July 5, 2018

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                 No. 156241

CHRISTOPHER ALLAN OROS,

        Defendant-Appellee.

BEFORE THE ENTIRE BENCH

WILDER, J.

This case involves an issue germane to every criminal trial—that is, whether sufficient evidence exists to support a defendant's conviction. In particular, the question before us is whether sufficient evidence exists to support defendant's jury conviction of first-degree premeditated murder, MCL 750.316(1)(a). Defendant does not dispute that he intended to kill the victim, Marie McMillan, when he stabbed her 29 times; rather, he argues that insufficient proofs were presented at trial with regard to the elements of

premeditation and deliberation to sustain his conviction. The Court of Appeals agreed, concluding that there was insufficient evidence of premeditation and deliberation, and therefore reduced defendant's first-degree premeditated murder conviction to second-degree murder.

A thorough review of the record requires a contrary result. We hold that the Court of Appeals erred when it improperly usurped the role of the fact-finder and misapplied this Court's opinion in *People v Hoffmeister*, 394 Mich 155; 229 NW2d 305 (1975). In lieu of granting leave to appeal, we reverse Part II of the Court Appeals opinion and hold that, based on the record evidence presented at defendant's trial, a reasonable juror could have found that the killing was committed with premeditation and deliberation. Defendant's first-degree premeditated murder conviction and sentence must be reinstated.

## I. FACTS AND PROCEDURAL HISTORY

On November 22, 2014, defendant went door-to-door targeting the residents of Clayborne Court Apartments in Kalamazoo, Michigan, in an attempt to solicit money. Defendant's ruse was that his girlfriend had left him without access to his vehicle, debit card, or cell phone. Defendant asked each resident if he could use their phone so that he could contact his girlfriend. If allowed to do so, defendant would actually place a call to his own cell phone, which was located inside his vehicle where no one was available to answer it. After an "unsuccessful" call, defendant would directly or indirectly solicit money from each resident, claiming that he needed gas money to get to work. According to one resident, the solicitation started out passive, but quickly turned aggressive.

Another resident testified that he felt uncomfortable because he sensed defendant was casing his apartment.

Defendant used this same subterfuge to gain access to the victim's apartment. During the police investigative interview, defendant admitted that he was able to persuade the victim to let him inside the apartment, and once inside, he used the victim's phone just as he had with the other residents. According to defendant, the victim, acting without provocation, struck him over the head with a coffee mug, knocking him to the floor. Defendant further stated that, at some point, the victim climbed on top of him with a "huge knife in her hand." A struggle over the knife ensued, and after defendant gained control over the knife, he began stabbing the victim. The victim sustained a total of 29 stab wounds, 19 of which were inflicted while she was still alive.

Defendant was charged with open murder, MCL 750.316.[1] At the conclusion of defendant's trial, the trial court instructed the jury on the elements of the crimes of first-degree premeditated murder, second-degree murder, and voluntary manslaughter as well as the evidentiary findings beyond a reasonable doubt that were required to convict defendant of any of these crimes. Specifically, the trial court stated:

> The Defendant is charged with open murder. To prove first degree premeditated murder, the Prosecutor must prove each of the following elements beyond a reasonable doubt.

---

[1] Defendant was also charged with first-degree felony murder, MCL 750.316(1)(b), first-degree arson, MCL 750.72, second-degree home invasion, MCL 750.110a(3), and escape while awaiting trial, MCL 750.197(2), but those convictions are not presently before us on appeal.

3

First, that the Defendant caused the death of Marie McMillan, that is, that Marie McMillan died as a result of a stabbing. Second, that the Defendant intended to kill Marie McMillan. Third, that this intent to kill was premeditated, that is thought out beforehand. Fourth, that the killing was deliberate which means that the Defendant considered the pros and cons of the killing and thought about and chose his actions before he did it. There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed. It is for you to decide if enough time passed under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection. Fifth, that the killing was not justified, excused or done under circumstances that reduce it to a lesser crime.

To prove second degree murder the Prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the Defendant caused the death of Marie McMillan, that is, that Marie McMillan died as a result of a stabbing. Second, that the Defendant had one of these three states of mind: he intended to kill, or he intended to do great bodily harm to Marie McMillan, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of actions. Third, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.

In count one, if you find the Defendant guilty of murder you must state in your verdict whether it is murder in the first degree or murder in the second degree.

The crime of murder may be reduced to voluntary manslaughter if the Defendant acted out of passion or anger brought about by adequate cause and before the Defendant had a reasonable time to calm down. For manslaughter, the following two things must be present. First, when the Defendant acted his thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted in impulse without thinking twice from passion instead of judgment. This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.

Second, the killing itself must result from this emotional excitement. The Defendant must have acted before a reasonable time had passed to calm down and return to reason. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

4

The jury retired to deliberate, and following its deliberation, the jury returned, finding defendant guilty of first-degree premeditated murder, MCL 750.316(1)(a). The trial court imposed a life imprisonment sentence without the possibility of parole for that conviction.

Defendant appealed, arguing that the prosecution failed to present sufficient proof to support the elements of premeditation and deliberation, and therefore his first-degree premeditated murder conviction rested upon insufficient evidence. The Court of Appeals agreed with defendant, finding that there was sufficient evidence to support a second-degree murder conviction but not defendant's first-degree premeditated murder jury conviction. *People v Oros*, 320 Mich App 146, 150; 904 NW2d 209 (2017). The Court of Appeals applied the factors set forth in *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992),[2] and explained that it found the circumstances surrounding the killing as the most significant factor. *Oros*, 320 Mich App at 155-156. The Court of Appeals rejected the prosecution's argument that defendant had adequate time to consciously reconsider his actions in a "second look," believing that this Court in *Hoffmeister* excluded the notion that premeditation could be formed between successive stab wounds. *Id*. at 156-157. Based on this understanding, the Court of Appeals vacated defendant's first-degree premeditated murder jury conviction, imposed a second-degree

---

[2] In *Schollaert*, the Court of Appeals set forth the following factors to consider when determining whether premeditation has been established: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Schollaert*, 194 Mich App at 170.

5

murder conviction, and ordered a remand to the trial court for sentencing as to that offense. *Id*. at 167-168.

The prosecution sought leave to appeal in this Court, and we directed the Clerk to schedule oral argument on the application and the parties to address the following issue:

> [W]hether the Court of Appeals properly viewed the trial record for sufficient evidence of premeditation and deliberation in the light most favorable to the prosecution, including drawing all reasonable inferences in favor of the jury verdict, and whether the record evidence is sufficient to sustain defendant's conviction for first-degree premeditated murder. *People v Gonzalez*, 468 Mich 636, 640-641 (2003). [*People v Oros*, 501 Mich 883 (2017).]

## II. STANDARD OF REVIEW

"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). But more importantly, "[t]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted; emphasis added). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be

6

accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) (emphasis added).

## III. LEGAL BACKGROUND

## A. FIRST-DEGREE PREMEDITATED MURDER

In pertinent part, to secure a conviction of first-degree premeditated murder, the prosecution must establish beyond a reasonable doubt[3] a "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a).[4] Relevant here, "[t]he elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).[5] "Premeditation and deliberation are legislative offspring and are to be construed in the light of the statutory scheme." *People v Morrin*, 31 Mich App 301, 325; 187 NW2d 434 (1971).

---

[3] Indeed, due process requires the prosecution to prove every element beyond a reasonable doubt. *Patterson v New York*, 432 US 197, 210; 97 S Ct 2319; 53 L Ed 2d 281 (1977). Inferences generally do not affect the application of this standard because it leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof to the defendant. *Co Court of Ulster Co, NY v Allen*, 442 US 140, 157; 99 S Ct 2213; 60 L Ed 2d 777 (1979). The exception is, of course, if "there is *no* rational way the trier could make the connection permitted by the inference." *Id.* (emphasis added).

[4] Cf. *People v Blevins*, 314 Mich App 339, 358; 886 NW2d 456 (2016) ("Second-degree murder is any kind of murder not otherwise specified in the first-degree murder statute. MCL 750.317. It is well established that 'second-degree murder is first-degree murder *minus* premeditation' . . . ."), quoting *People v Carter*, 395 Mich 434, 438; 236 NW2d 500 (1975).

[5] Defendant does not dispute that he intentionally killed the victim. Thus, we will focus only on the elements of premeditation and deliberation.

The Legislature did not explicitly define the meaning of premeditation and deliberation. However, we have recognized the ordinary meaning of the distinct and separate terms as the following: "[t]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Woods*, 416 Mich 581, 599 n 2; 331 NW2d 707 (1982) (quotation marks and citation omitted).[6] While the statute may be clear on its face that premeditation and deliberation are separate elements, a rigid and mechanical application is often difficult because the same facts may tend to establish each element, and they are subjective factors usually incapable of direct proof absent an admission or confession by the defendant. See Cardozo, What Medicine Can Do for Law, in *Law and Literature and Other Essays and Addresses* (New York: Harcourt, Brace & Co, 1931), p 97 ("[O]n the face of the statute the distinction is clear enough. The difficulty arises when we try to discover what is meant by the words deliberate and premeditated."); see also *Morrin*, 31 Mich App at 331, citing *People v Wolf*, 95 Mich 625; 55 NW 357 (1893).

---

[6] The meaning of premeditation and deliberation, and the relation of "second look" law to those elements, is well engrained in our state's jurisprudence, and notably, neither party has asked that the state of our law be changed. Therefore, unlike the dissent, we decline to redefine the meaning that our jurisprudence has attached to the elements of premeditation and deliberation, and the relation of second-look law, which is discussed in more detail below, to those elements. See *post* at 3, 5 (MCCORMACK, J., dissenting) ("[A] deliberate and premeditated killing requires proof beyond merely thinking twice— the prosecutor must show that the perpetrator's thought process had the right *timing* (premeditated) and was of the right *quality* (deliberate)"; "sufficient opportunity to take a second look is better thought of as a *precondition* for a finding of premeditation and deliberation.").

"Since the distinguishing elements of first-degree murder ultimately resolve themselves into questions of fact, minimum standards of proof, if reasonably related to the circumstances which must be proved, will serve to preserve the distinction between first-degree and second-degree murder." *Morrin*, 31 Mich App at 328. "The real focus of first-degree murder jurisprudence in Michigan has been on the kind of evidence which permits an inference of premeditation and deliberation," and that inference may be established "from *all* the facts of the case."[7] *Id*. at 328, 331 (emphasis added). In other words, when considering a sufficiency-of-the-evidence issue, "[t]he question is whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation." *Id*. at 331.

## B. SECOND LOOK

Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a "second look."[8] *People v Gonzalez,*

---

[7] An inference is the logical bridge between a fact believed to be true and a second fact, the truth of which is at issue. Dressler, Understanding Criminal Law (3d ed), § 8.03, p 77. "The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference. In many circumstances courts hold that proof of the first fact furnishes a basis for inference of the existence of the second." *Tot v United States*, 319 US 463, 467; 63 S Ct 1241; 87 L Ed 1519 (1943).

[8] Although not in dispute, it is important to note that the jury in the instant case was instructed on "second look." Specifically, the trial court articulated the following instruction: "There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed. It is for you to decide if enough time passed under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection."

9

468 Mich 636, 641; 664 NW2d 159 (2003); *People v Tilley*, 405 Mich 38, 45; 273 NW2d 471 (1979). That is, "some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation," but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look. See *Gonzalez*, 468 Mich at 641 (quotation marks, brackets, and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination," *Tilley*, 405 Mich at 45 (quotation marks and citation omitted), "[i]t is often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds,' " 2 LaFave, Substantive Criminal Law (3d ed), § 14.7(a), p 650 (citations omitted).[9] "By the weight of authority the deliberation essential to establish murder in the first degree need not have existed for any particular length of time before the killing." 4 Blackstone, Commentaries on the Laws of England, p *195 n 14. "The time within which a wicked

---

[9] Second-look law has been well established in Michigan for over a hundred and fifty years—dating back even before the codification of the degrees of murder. See *Maher v People*, 10 Mich 212, 223-224 (1862) ("No precise time, therefore, *in hours or minutes*, can be laid down by the court, as a rule of law, within which the passions *must be held* to have subsided and reason to have resumed its control, without setting at defiance the laws of man's nature, and ignoring the very principle on which provocation and passion are allowed to be shown, at all, in mitigation of the offense. The question is one of reasonable time, depending upon all the circumstances of the particular case; and where the law has not defined, and can not without gross injustice define the precise time which shall be deemed reasonable, as it has with respect to notice of the dishonor of commercial paper. In such case, where the law has defined what shall be reasonable time, the question of such reasonable time, the facts being found by the jury, is one of law for the court; but in all other cases it is a question of fact for the jury; and the court can not take it from the jury by assuming to decide it as a question of law, without confounding the respective provinces of the court and jury[.]").

purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense; and an intelligent jury can seldom be at a loss to determine it." *People v Holmes*, 111 Mich 364, 372; 69 NW 501 (1896) (quotation marks and citation omitted).

"The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances." *Hoffmeister*, 394 Mich at 159. In other words, what constitutes sufficient evidence to support the elements of premeditation and deliberation may vary from case to case because the factual circumstances will vary, but the ultimate answer may be resolved in determining whether reasonable inferences may be made to support the fact-finder's verdict. For example, in *People v Johnson*, 460 Mich 720, 733; 597 NW2d 73 (1999), this Court held that evidence of a struggle between the defendant and the victim can be evidence of premeditation and deliberation based on the defendant's opportunity to take a "second look." And this Court has also held that "[m]anual strangulation can be used as evidence that a defendant had an opportunity to take a 'second look.' " *Gonzalez*, 468 Mich at 641. But in *Hoffmeister*, this Court found that insufficient evidence existed to show premeditation and deliberation because, when the only evidence presented was the number of stab wounds, there was no basis for the jury to conclude that the defendant had adequate time for a "second look." *Hoffmeister*, 394 Mich at 159, 161.

## IV. APPLICATION

With this legal background in mind, we now turn to the application of these principles in the instant case. Upon a review of the record in the light most favorable to

11

the prosecution, it is apparent that a rational trier of fact, in this case the jury, had sufficient evidence from which to draw reasonable inferences that defendant acted with premeditation and deliberation.[10]

Defendant first told the lead detective that there were two men in the victim's apartment who struck him in the head with a stick and that he was able to run away without incident. According to the detective, defendant then changed his story and admitted that the victim allowed him to come inside her apartment. Once inside, defendant sat at a computer desk to use the telephone. At that point, defendant claimed that the victim struck him over the head with a coffee mug, knocking him to the ground, and climbed on top of him with "a huge knife in her hand." Defendant stated that he was pinned down on the ground by the victim for two hours. A struggle ensued, and at some point, defendant stated that he was able to gain control of the knife. While holding the

---

[10] Rather than treating this as a sufficiency-of-the-evidence issue, which arises *after* the fact-finder has *already* found the defendant guilty of the charged crime, the dissent implicitly treats this issue as the appellate review of a motion for directed verdict or an instructional question examining whether the charge should have been submitted to the jury in the first instance. This is not, however, the posture of the case before us, as defendant has not raised either of those issues. Instead, the first-degree premeditated murder charge *was* submitted to the jury (along with second-degree murder and voluntary manslaughter) as is appropriate when a defendant has been charged with open murder. After deliberating, the jury found defendant guilty of first-degree premeditated murder. Having been charged with open murder, it was the province of the jury, and not of the court, to measure the quantity of proof and decide whether there was sufficient evidence to support a first-degree premeditated murder conviction. *People v Collins*, 303 Mich 34, 51; 5 NW2d 556 (1942). Therefore, our focus at this juncture is determining whether sufficient evidence was presented at defendant's trial to support the verdict rendered by the jury.

knife in one hand, defendant punched the victim in the face with his other fist. He then proceeded to stab the victim in the stomach.

The prosecution presented evidence that directly conflicted with defendant's description of what transpired in the apartment. That evidence included the following: (1) defendant did not have any head injuries consistent with his claim that the victim struck him over the head with a coffee mug, and (2) shattered pieces of the coffee mug collected at the scene were DNA tested, revealing the presence of the victim's blood and hair—not defendant's. The jury chose to resolve the conflicting evidence in favor of the prosecution. See *Hardiman*, 466 Mich at 431 (stating that it is the jury's function to weigh competing evidence). On appellate review, we accept as true the evidence contradicting defendant's version of the crime, as we must consider the evidence in a light most favorable to the prosecution, see *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992) ("[T]his Court determined long ago that when an appellate court reviews the evidence supporting a conviction, factual conflicts are to be viewed in a light favorable to the prosecution[.]"), and view every reasonable inference in favor of the jury verdict. We conclude that from this evidence, an inference may be fairly drawn that defendant was the initial aggressor and not the victim, as defendant had claimed.

Evidence of defendant's conflicting statements and that he was the initial aggressor allowed the jury to infer that he acted without provocation and in a cool state of mind rather than on impulse when his assaultive conduct escalated from striking the victim in the head with a coffee mug to gaining control of a kitchen knife, to punching the victim in the face, to finally stabbing the victim 29 times to her death. See *Holmes*, 111 Mich at 372 ("[W]henever murder is intentionally committed, without serious

13

provocation, and under circumstances which do not reasonably account for such an excitement of passion as naturally deprives men of deliberation, common experience teaches us that such an act is wanton, and its perpetrator responsible for it, as in other cases of cold-blooded crime."). An inference of each element of premeditation and deliberation may be drawn from this evidence—that is, defendant thought about killing the victim before proceeding to kill the victim, and defendant measured and evaluated his choices before proceeding to kill the victim.

By defendant's own admission, these acts were distinct and separate from one another. While we are incapable of pinpointing the exact moment defendant thought about killing the victim and measured and evaluated his choices, the inference may be drawn that his decision to kill the victim and his evaluation of his options arose separately before he obtained a lethal weapon. It is possible defendant may have thought about the killing before first striking the victim over the head with a coffee mug or when he punched the victim in the face.[11] Either way, both acts support the inference that defendant had and took time for reflection before proceeding to stab the victim.

---

[11] There is ample authority holding that when the evidence permits a jury to infer that the defendant had the opportunity to premeditate, this alone is sufficient evidence that he or she did so. Examples include *Tilley*, 405 Mich at 45 (holding that the jury had sufficient evidence to support the conclusion of ample opportunity to premeditate and deliberate in the interval of time between the defendant securing possession of the gun and the volley of shots as the victim was retreating); see also *People v DeRuyscher*, 29 Mich App 515, 517-518; 185 NW2d 561 (1971) (holding that a sufficient lapse of time between the defendant's separate acts of hitting, kicking, and stomping allowed the possibility that the defendant acted with premeditation and holding that the weight of such evidence was within the province of the jury); *People v Statkiewicz*, 247 Mich 260, 264; 225 NW 540 (1929) (holding that the defendant had ample time, i.e., opportunity, to form malice and that it was for the jury to determine the intent with which the shooting was done); *People v Bigelow*, 225 Mich App 806; 571 NW2d 520 (1997), special panel convened, opinion

That is because defendant had to think about obtaining the knife—a lethal weapon—to accomplish his desired act of killing the victim. The prosecution argued that defendant may have retrieved the knife from the victim's kitchen, while defendant told the police that he obtained the knife from the victim herself after struggling with her for it. Either way, a period of time between the initial homicidal intent and the ultimate killing existed, during which defendant could have taken a "second look."[12] See, e.g., *People v Waters*, 118 Mich App 176, 187; 324 NW2d 564 (1982) (finding that an inference could be made that the formation of the homicidal intent occurred between the time that the defendant drew the weapon from his waistband and the instant he pulled the trigger).

Likewise, it is reasonable to infer that defendant had the opportunity for a "second look" during the period of time that elapsed when he flipped the victim over to position her face down on the floor, climbed onto her back, and then continued to stab her. It took thought and reflection to flip the victim over, permitting an inference that defendant acted

---

vacated on other grounds (September 16, 1997), and opinion reinstated 229 Mich App 218 (1998) (holding that sufficient evidence of first-degree premeditated murder existed when evidence revealed, in relevant part, that defendant did not initially plan to participate in the murder but at the scene, he found a letter opener, which was used by another perpetrator to stab the victim).

[12] The dissent asserts that the mere passage of time cannot alone constitute sufficient evidence of premeditation and deliberation to sustain a conviction of first-degree murder. However, as noted earlier, our caselaw has consistently recognized that the requisite premeditation and deliberation can be formed solely in the amount of time necessary to take a "second look." If premeditation and deliberation can be formed in the passage of time needed to take a "second look," then it necessarily follows that the passage of time might be the only evidence of premeditation and deliberation in light of the surrounding circumstances and that this would be sufficient to sustain the conviction.

15

with both premeditation and deliberation. Moreover, the location and depth of the victim's stab wounds support an inference that defendant thought about, measured, and evaluated his options. Many of the stab wounds were anywhere from 2 to 5 inches deep, which would indicate the amount of force used to not only plunge the knife into the victim's body, but also to retract it. Given the amount of effort expended for these particular stab wounds, it was reasonable for the jury to infer that sufficient time existed between each stab wound to allow defendant the opportunity to take a "second look." Therefore, given the record evidence, which reveals that defendant's action escalated from physically assaultive conduct to the repeated use of a lethal weapon over an unspecified interval of time, we conclude that a reasonable juror could have found that the killing was committed with premeditation and deliberation.

Our holding is consistent with *Hoffmeister* as we do not hold today that the sheer number of stab wounds alone established the elements of premeditation and deliberation. Cf. *Hoffmeister*, 394 Mich at 159 ("The brutality of a killing does not itself justify an inference of premeditation and deliberation. 'The mere fact that the killing was attended by much violence or that a great many wounds were inflicted is not relevant (on the issue of premeditation and deliberation), as such a killing is just as likely (or perhaps more likely) to have been on impulse.' ") (citation omitted).[13] Rather, we hold that the jury could reasonably infer and find from the factual record—separate and distinct from the sheer number of stab wounds alone—that defendant had an opportunity to subject his

---

[13] The prosecution in *Hoffmeister* conceded that the stab wounds " 'were probably [inflicted] in rapid succession . . . .' " *Hoffmeister*, 394 Mich at 159 n 4. In this case, the prosecution has made no such concession.

actions to a "second look," and therefore acted with premeditation and deliberation. See *Tilley*, 405 Mich at 45-46. We emphasize that the application of such principles may vary from case to case because the inquiry is highly dependent on the facts of each case.[14] However, the fundamental principles remain the same—sufficient evidence must exist to support each element of first-degree premeditated murder.

## V. CONCLUSION

For the foregoing reasons, we conclude that the jury had sufficient evidence from which it could conclude beyond a reasonable doubt that defendant was guilty of first-degree premeditated murder. The Court of Appeals erred by holding otherwise. For this reason, we reverse Part II of the Court of Appeals opinion and reinstate defendant's first-degree premeditated murder conviction and sentence.

> Kurtis T. Wilder
> Stephen J. Markman
> Brian K. Zahra
> Richard H. Bernstein
> Elizabeth T. Clement

---

[14] See *People v Meier*, 47 Mich App 179, 183; 209 NW2d 311 (1973) (recognizing that the circumstances in which proof of premeditation and deliberation are shown is a question without a consistent answer because no two murders, or murderers, are alike).

17

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                                                    No. 156241

CHRISTOPHER OROS,

      Defendant-Appellee.

_____

MCCORMACK, J. (*dissenting*).

No one disputes that defendant Christopher Oros brutally murdered Marie McMillan in November 2014. Nor does anyone dispute that he did so intentionally—he admitted as much himself—when he stabbed her no fewer than 29 times. The only dispute is whether there was sufficient evidence for a jury to conclude beyond a reasonable doubt that Oros thought about killing McMillan in the specific way required by first-degree murder before deciding to act. The question is whether, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the jury's verdict, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Oros decided to kill McMillan after premeditation and deliberation.

Bad facts, bad law.

The majority concludes that because the jury could reasonably infer that the defendant had enough time to subject his actions to a "second look," there was sufficient evidence to find beyond a reasonable doubt that he *did* premeditate and deliberate. That

is, the possibility that he could have premeditated and deliberated is all that's required. In so holding, the majority treats premeditation, deliberation, and intent to kill as fungible—thereby collapsing the distinction between first- and second-degree murder—and loses sight of the burden of proof. The law demands principled distinctions between criminal offenses and proof of each element beyond a reasonable doubt. I respectfully dissent.

The standard of review for sufficiency of evidence is exceedingly deferential—a reviewing court must make all reasonable inferences to support the jury's verdict—but the verdict is not unreviewable: it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson v Virginia*, 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979). Due process requires that the prosecution prove every element beyond all reasonable doubt. *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). In a first-degree murder case, that means the prosecution must prove premeditation and deliberation beyond a reasonable doubt. "[S]ufficient proof [is] defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson*, 443 US at 316. It requires that the prosecution put forth more than a "mere modicum" of evidence. *Id*. at 320.

To be sure, a jury can make reasonable inferences to arrive at a verdict. *Black's Law Dictionary* (10th ed) defines "inference" as "[a] conclusion reached by considering other facts and deducing a logical consequence from them." The prosecution must produce sufficient evidence to make the jury's inferences reasonable. *People v Hardiman*, 466 Mich 417, 430; 646 NW2d 158 (2002). "[T]he inferences must have

2

support in the record and cannot be arrived at by mere speculation." *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998). Thus, deference is due up to the last link in the chain of logical inferences, but not beyond that point—if the jury has to resort to speculation to reach its verdict, the prosecution has failed to carry its burden of proof. *Id*.; see also *Pennsylvania R Co v Chamberlain*, 288 US 333, 344; 53 S Ct 391; 77 L Ed 819 (1933) (providing that a jury verdict cannot "rest[] upon mere speculation and conjecture").

First-degree murder is "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). To "premeditate" is to "think about beforehand" and to "deliberate" is to "measure and evaluate the major facets of a choice or problem." *People v Bass*, 317 Mich App 241, 266; 893 NW2d 140 (2016) (quotation marks and citation omitted). It is well settled that when reading a statute, we "must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." *People v Miller*, 498 Mich 13, 25; 869 NW2d 204 (2015) (quotation marks and citation omitted). Thus, a deliberate and premeditated killing requires proof beyond merely thinking twice—the prosecutor must show that the perpetrator's thought process had the right *timing* (premeditated) and was of the right *quality* (deliberate). The two factors are, of course, correlated: the quality of thought tends to improve with time. But for the question of sufficiency of the evidence, we must consider whether the evidence allowed the jury to infer that the defendant at least thought about his intent to kill before acting on it, that there was sufficient time for a reasonable person to measure and evaluate the

3

decision to kill (that is, time to take a "second look"), and that the defendant did, in fact, measure and evaluate the decision to kill.

Timing first: Michigan jurisprudence has emphasized that " ' "[s]ome time span between [the] initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation." ' " *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003), quoting *People v Tilley*, 405 Mich 38, 45; 273 NW2d 471 (1979), in turn quoting *People v Hoffmeister*, 394 Mich 155, 161; 229 NW2d 305 (1975). The amount of time necessary to premeditate is "incapable of exact determination," but at a minimum, "the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.' " *People v Vail*, 393 Mich 460, 469; 227 NW2d 535 (1975), overruled on other grounds by *People v Graves*, 458 Mich 476 (1998) (quotation marks and citation omitted).

Time to take a second look is necessary, but not sufficient, for a finding of premeditation and deliberation. The prosecution must prove first that there was sufficient time to allow the defendant to take a "second look" after forming the intent to kill and, second, that the defendant did, in fact, premeditate before acting on the intent to kill. "[P]remeditation is a question of fact, not of law." *People v Moss*, 70 Mich App 18, 45; 245 NW2d 389 (1976) (M. J. KELLY, J., concurring in part and dissenting in part), aff'd sub nom *Tilley*, 405 Mich 38. And while such a question is not susceptible to bright-line rules, I am aware of no authority which holds that an inference that the defendant had the opportunity to premeditate has alone been sufficient evidence that he did so.[1] Rather,

---

[1] The prosecution cites two cases in which the jury could have inferred that the defendant

4

sufficient opportunity to take a second look is better thought of as a *precondition* for a finding of premeditation and deliberation.  In short, premeditation requires some passage of time, but the passage of time does not prove premeditation, much less deliberation.

The majority asserts that "[s]econd-look law has been well established in Michigan for over a hundred and fifty years . . . ." *Ante*, p 10 n 9.  True.  And that makes it all the more puzzling that the majority has disregarded those time-honored precedents and instead fashioned a new rule: evidence that a defendant had sufficient time for a second look is—on its own—sufficient evidence to prove the elements of premeditation *and* deliberation.  The majority cites *Gonzalez*, 468 Mich at 641, and *Tilley*, 405 Mich at 45, for the proposition that "[p]remeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *Ante* at 9.  But this misstates the rule.  *Gonzalez* held that time for a second look "*is necessary to* establish premeditation and deliberation." *Gonzalez*, 468 Mich at 641,

---

had time to take a second look based on the manner of killing.  In *People v Gonzalez*, we said that a slow means of death would give the defendant time to rethink his actions and could be evidence of premeditation.  *Gonzales*, 468 Mich at 641-642.  And the Court of Appeals, in *People v Unger*, stated that a jury could infer that the defendant had time to take a second look based on the "nature and number of a victim's wounds." *People v Unger*, 278 Mich App 210, 231; 749 NW2d 272 (2008).  But neither case is helpful.  Premeditation was not determined in those cases on the basis of sufficient time alone.  In *Gonzalez*, the defendant visited the victim's apartment and then returned later that day to rape and murder her.  And in *Unger*, the defendant murdered his wife during the pendency of their divorce by pushing her off a rooftop deck; the prosecution presented expert testimony that the victim had not died from her head injuries but had drowned after being dragged or moved into the lake.

5

quoting *Tilley*, 405 Mich at 45, in turn quoting *Hoffmeister*, 394 Mich at 161 (quotation marks omitted; emphasis added). Until today, we have never held that time for a second look *establishes* premeditation and deliberation. It was necessary, not sufficient.

Now it seems the opportunity to premeditate creates a rebuttable presumption of premeditation and deliberation. In effect, the majority holds that the jury can infer premeditation based on the opportunity for a second look. And inference of premeditation in turn permits the jury to infer deliberation. The burden then shifts to the defendant to prove that he did not premeditate. That's not our system.

And even if it were, proving premeditation alone is not enough. The statute requires that the prosecution establish that the premeditation was also of the requisite *quality*—namely, that the perpetrator's decision to kill was the product of deliberate thought—that he "measure[d] and evaluate[d] the major facets" of the decision to kill. See *Bass*, 317 Mich App at 266 (quotation marks and citation omitted). See also 2 LaFave, Substantive Criminal Law (3d ed), § 14.7(a), pp 649-650 ("It is not easy to give a meaningful definition of the words 'premeditate' and 'deliberate' as they are used in connection with first-degree murder. Perhaps the best that can be said of 'deliberation' is that it requires a cool mind that is capable of reflection, and of 'premeditation' that it requires that the one with the cool mind did in fact reflect, at least for a short period of time before his act of killing.").[2]

_____

[2] We have long held that deliberation requires rational thought, or a degree of calculation. Drawing on the common law, we have generally described deliberation in terms of cool rationality (versus hot emotion). " '[P]remeditation and deliberation characterize a thought process undisturbed by hot blood.' " *Vail*, 393 Mich at 468-469, quoting *People*

Where the majority opinion does address deliberation as a separate element of first-degree murder, it appears to understand it as merely acting intentionally or even voluntarily.  See, e.g., *ante* at 13 ("Evidence of defendant's conflicting statements and that he was the initial aggressor allowed the jury to infer that he acted without provocation and in a cool state of mind rather than on impulse . . . .").  Of course, acting volitionally or intentionally, or even with malice, is not enough to elevate a homicide to

---

*v Morrin*, 31 Mich App 301, 329-330; 187 NW2d 434 (1971).

> [M]urder is not always attended with the same degree of wicked design, or, to speak more accurately, with the same degree of malice.  It may be committed in cold blood, and with much calculation, and it may be committed on a sudden impulse of passion, where the intent is formed and executed in the heat of blood, without any sufficient provocation to extenuate the degree of the offense to manslaughter.  In both of these instances, and in the intermediate cases where the design is of greater or less duration, there is the actual intent to take life.  [*People v Scott*, 6 Mich 287, 293 (1859).]

> In *Nye v People*, 35 Mich 16, 19 (1876), we explained:

> In dividing murder into degrees, its common-law qualities are not changed, but (except in special cases) the division is chiefly between cases where the malice aforethought is deliberate and where it is not.  It was rightly considered that what is done against life deliberately indicates a much more depraved character and purpose than what is done hastily or without contrivance.  But it is a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse.

See also *People v Martin*, 472 Mich 930, 932 (2005) (MARKMAN, J., dissenting) ("[E]ven assuming defendant did in fact shoot his father because he was 'mad,' the statement still fails to give rise to an inference of premeditation.  Rather, such a statement is inconsistent with the required showing that defendant be undisturbed by hot blood."); *Tilley*, 405 Mich at 44-45 ("[W]hen a homicide occurs during a sudden affray this Court has found that it would be 'a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse.' ") (citation omitted).

7

first-degree murder; an involuntary stabbing would not be criminal at all. And the intent to kill is not unique to first-degree murder.

The rule announced today is a departure from our precedent. We rejected the sufficiency of similar evidence in *Hoffmeister*, 394 Mich 155. There, the victim's car and the defendant's car had been seen parked together off of I-96 near an exit ramp. The evidence established that the victim and the defendant had a brief encounter during which the victim was stabbed multiple times. The wounded victim drove about a quarter mile to her friend's house and then died within the hour.

We held that the nature and number of wounds, plus the fact that the defendant spent "several moments" with the victim, was not sufficient evidence to allow the jury to reasonably infer premeditation and deliberation. *Id*. at 159. We reasoned that the number of wounds and brutality was not enough to prove premeditation and deliberation, because such a killing is just as likely (or even more likely) to have been impulsive. And nothing in the record supported the theory that the defendant took a moment to measure and evaluate what he was doing. *Id*. at 159-160. "The violence and multiple wounds, while more than ample to show an intent to kill, cannot standing alone support an inference of a calmly calculated plan to kill requisite for premeditation and deliberation, as contrasted with an impulsive and senseless, albeit sustained, frenzy." *Id*. at 160 (quotation marks and citation omitted). Moreover, although the timeline showed that the defendant and the victim were together for some time before the murder, which "le[ft] open the possibility of premeditation and deliberation," *id*. at 161, there was no evidence from which to conclude that the killing was, in fact, premeditated and deliberate; that there could have been sufficient time for deliberate thought "is not evidence that

8

appellant actually did cogitate and mull over the intent to kill," *id*. (quotation marks and citation omitted).

The majority claims it is distinguishing *Hoffmeister*, while announcing a standard that effectively overrules it. *Hoffmeister* held that evidence is insufficient when it merely leaves open the possibility of premeditation and deliberation. Now the opposite is true with no stare decisis analysis and no explanation for the dislocation of that precedent.

Here, like in *Hoffmeister*, the evidence—at most—permitted the jury to infer that the defendant may have had sufficient time to reflect. From there, the jury could only speculate whether he engaged in deliberate thought before deciding to act. The victim and the defendant were not previously acquainted. And the violence and multiple wounds cannot, on their own, support the inference of premeditation and deliberation. We know that from *Hoffmeister*. The gruesome physical evidence allowed the jury to infer a single fact—that the defendant might have had sufficient time to take a second look. But beyond that, the jury could only speculate between two possibilities: either the defendant did premeditate and deliberate, or he did not. The determination is no better than a coin flip. That's not proof beyond a reasonable doubt.

The majority's blow-by-blow account of its theory of the murder fails to identify any evidence from which to infer that the defendant thought about his intent to kill before deciding to act. For example, even resolving conflicting evidence in favor of the prosecution, the majority's conclusion that the defendant was the initial aggressor is relevant only to a lack of adequate provocation. This might be helpful if the dispute were between voluntary manslaughter and second-degree murder, because "provocation is not an element of voluntary manslaughter. Rather, provocation is the circumstance that

9

negates the presence of malice." *People v Mendoza*, 468 Mich 527, 536; 664 NW2d 685 (2003) (citation omitted). But both first- and second-degree murder share the element of malice. That the defendant acted with malice is beside the point.

First principles in the elements of each level of homicide are important. Every murder involves at least two elements: the killing of a living person with malice aforethought. *Maher v People*, 10 Mich 212, 218 (1862).[3] The killing of another is the *actus reus*, and malice aforethought is the *mens rea*, or "guilty mind." 1 LaFave, Substantive Criminal Law (3d ed), § 5.1, p 446. Second-degree murder requires acting with one of three forms of malice aforethought: intent to kill, intent to do serious bodily injury, or a depraved heart. 2 LaFave, § 14.1, p 566. First-degree murder requires not only that the perpetrator intend to kill, but also that he premeditated the killing and deliberated about it. *Id*. at § 14.7(a), p 649. Therefore, intent-to-kill murder without the added elements of premeditation and deliberation can only be second-degree murder. *Id*. at § 14.7(e), p 664.[4] Thus, even textbook second-degree murder involves some amount of "thought," in the sense that the perpetrator intends to kill and acts on it. In short, the

---

[3] And "aforethought" is somewhat superfluous "since malice need exist only at the time the homicidal act is committed . . . . Nevertheless, statutes still use the language 'malice aforethought' to define murder, the apparent intent being to incorporate by reference the vast body of law that has been developed over the centuries." 2 Wharton's Criminal Law (15th ed), § 139, p 246.

[4] Michigan does not have some outlier statutory approach; we are in full accordance with the scholarly treatises. See *People v Dykhouse*, 418 Mich 488, 495; 345 NW2d 150 (1984); *People v Aaron*, 409 Mich 672, 713-714; 299 NW2d 304 (1980); Gillespie, Michigan Criminal Law & Procedure, Practice Deskbook (2d ed), §§ 5:255-5:258, 5:273, pp 264-265, 267; 2 Wharton's Criminal Law, §§ 139, 142, pp 243-247, 257-278.

defendant's admission that he intended to kill McMillan means that he must be guilty of murder. But it tells us nothing about when, how, or why he decided to act on his intent to kill—the variables the prosecution needed to fill in to assign first- or second-degree culpability to the murder.[5]

The majority also suggests that the "location and depth of the victim's stab wounds support an inference that defendant thought about, measured, and evaluated his options." *Ante* at 16. And indeed, it may be permissible to infer premeditation and

---

[5] The majority cites *People v Holmes*, 111 Mich 364, 372; 69 NW 501 (1896), to support its claim that evidence that the defendant was the initial aggressor permits the jury to infer premeditation and deliberation. But the excerpt the majority cites from *Holmes* is, in fact, quoting *Scott*, 6 Mich at 295. *Scott*'s holding, however, concerned the elements required to prove assault with intent to murder, so it's dubious whether the quoted language parses the differences between first- and second-degree murder. And the quotation is taken out of context. Immediately before the majority's quoted text, the *Scott* Court makes clear that it is discussing whether a homicide triggered by *inadequate* provocation should be murder or manslaughter:

> Voluntary manslaughter often involves a direct intent to kill, but the law reduces the grade of the offense because, looking at the frailty of human nature, it considers great provocations sufficient to excite the passions beyond the control of reason. But provocations often arise which are of less intensity, and are not in law regarded as sufficient to reduce the crime to manslaughter. If it appears that murder is committed upon a heat of passion engendered entirely by such provocations, and suddenly conceived, such a murder can not properly be called deliberate. But whenever murder is intentionally committed without serious provocation, and under circumstances which do not reasonably account for such an excitement of passion as naturally deprives men of deliberation, common experience teaches us that such an act is wanton, and its perpetrator responsible for it, as in other cases of cold-blooded crime. The time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. [*Scott*, 6 Mich at 295.]

11

deliberation when "the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design." 2 LaFave, § 14.7(a), p 653.[6] Thus, the question here is whether the jury could reasonably infer that the defendant's admittedly intentional actions were deliberate and calculated based on some special quality of the physical evidence. The majority vaguely refers to the "location" of the wounds, as well as to the force required to inflict them, as evidence that permitted the jury to infer both premeditation and deliberation. *Ante* at 16. But the majority itself recognizes that this shows nothing more than the opportunity for a second look. I don't know how that evidence is any different in quality from the evidence in *Hoffmeister*, in which we held that the evidence "le[ft] open the possibility of premeditation and deliberation" but found no basis in the record to conclude that the defendant actually took a second look. *Hoffmeister*, 394 Mich at 161.

The majority's decision today makes the difference between first- and second-degree murder hard to discern. And the statute is not the problem. "Close cases can be imagined under virtually any statute" and are "addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *United States v Williams*, 553 US 285, 306; 128 S Ct 1830; 170 L Ed 2d 650 (2008). But the majority's

---

[6] Inferring premeditation and deliberation from "the manner of killing . . . require[s] . . . evidence (usually based upon examination of the victim's body) showing that the wounds were deliberately placed at vital areas of the body. The mere fact that the killing was attended by much violence or that a great many wounds were inflicted is not relevant in this regard, as such a killing is just as likely (or perhaps more likely) to have been on impulse." 2 LaFave, § 14.7(a), pp 655-656, citing *Hoffmeister*, 394 Mich 155.

12

gloss so blurs the line between first- and second-degree murder that it renders vague an otherwise clear statute. See *Grayned v City of Rockford*, 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972) ("[L]aws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.") (citation omitted). When there is no distinction in the proof required for each crime, the guarantee that "close cases" must be proved beyond a reasonable doubt is hollow. If intent to kill plus any time window during which one could have accomplished premeditation and deliberation now amounts to proof beyond a reasonable doubt, then I find it hard to imagine what second-degree murder wouldn't also be a first-degree murder. That can't be constitutional.[7]

---

[7] Indeed, the Arizona Supreme Court held that it was duty-bound to reject as unconstitutionally vague the same reading of its murder statute that the majority adopts today:

> We conclude, as did the court of appeals, that if the only difference between first and second degree murder is the mere passage of time, and that length of time can be "as instantaneous as successive thoughts of the mind," then there is no meaningful distinction between first and second degree murder. Such an interpretation would relieve the state of its burden to prove actual reflection and would render the first degree murder statute impermissibly vague and therefore unconstitutional under the United States and Arizona Constitutions.

> . . . While the phrase "proof of actual reflection is not required" can be interpreted in a way that relieves the state of the burden of proving reflection, such an interpretation would not pass constitutional scrutiny, and the legislature could not have intended such a result. Accordingly, we conclude that the legislature intended to relieve the state of the burden of proving a defendant's thought processes by direct evidence. It intended for

13

There are few principles of federal constitutional law more clearly established than the accused's protection against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 US at 364. And "[t]he constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless. Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson*, 443 US at 323-324 (citation omitted). So too even a heinous killer.

As I said at the start, this was a brutal crime. But even in cases involving the most horrific facts, courts try cases and not people, and in each and every case the Constitution

---

premeditation, and the reflection that it requires, to mean more than the mere passage of time.

We find support for our interpretation in the admonition that "an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." This language distinguishes impulsive killings from planned or deliberated killings and confirms the legislature's intent that premeditation be more than just a snap decision made in the heat of passion.

Our decision today distinguishes the *element* of premeditation from the *evidence* that might establish that element. Although the mere passage of time suggests that a defendant premeditated—and the state might be able to convince a jury to make that inference—the passage of time is not, in and of itself, premeditation. To allow the state to establish the element of premeditation by merely proving that sufficient time passed to permit reflection would be to essentially relieve the state of its burden to establish the sole element that distinguishes between first and second degree murder. [*State v Thompson*, 204 Ariz 471, 478; 65 P3d 420 (2003) (en banc) (citations omitted).]

requires proof beyond a reasonable doubt of every element. Shortcuts are tempting, but the rule of law doesn't allow them. There is simply no basis in the evidence to infer proof beyond a reasonable doubt that the defendant's decision to kill McMillan was premeditated and deliberated. The Court of Appeals was correct. I would affirm.

<div style="margin-left:50%">

Bridget M. McCormack
David F. Viviano

</div>